Charles BRIGGS, et al.,
Plaintiffs–Appellants,

v.

Louis W. SULLIVAN, M.D., et al.,
Defendants–Appellees.

No. 89–15515.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 30, 1989.

Decided Sept. 25, 1989.

Curtis L. Child, Legal Services of Northern California, Sacramento, Cal., for plaintiffs-appellants.

Edmund F. Brennan, Asst. U.S. Atty., Sacramento, Cal., for defendants-appellees.

Before TANG, REINHARDT and WIGGINS, Circuit Judges.

REINHARDT, Circuit Judge:

Charles Briggs suffers from a disabling mental impairment, a condition which renders him eligible to receive disability payments from the federal government. Because of the nature of his impairment, the Secretary of Health and Human Services, appellee Louis Sullivan ("the Secretary"), has decided that his federal benefits payments should be paid to a representative, who would act essentially as a trustee for Briggs, paying his basic expenses and giving him money as necessary and prudent. Robert Pierce, another appellant in this case, is also disabled. Because his benefits constitute "Supplemental Security Income payments" and because his disability stems in part from alcohol or drug addiction, the Secretary is *required* by statute to make the payments in which he is entitled to a representative rather than to him directly.

Briggs, Pierce, and the other appellants in this action have either been unable to find representatives satisfactory to the Secretary and have thus received no payments, or have had their payments suspended when, for a variety of reasons, their current representatives could no longer continue in that role. In several instances, beneficiary-appellants have been robbed or otherwise exploited by their representatives and have asked the Secretary to stop paying their benefits to a particular represent-

ative, or to any representative at all. In every case where a beneficiary-appellant currently lacks a representative, however, the Secretary has suspended the payment of benefits altogether, refusing to pay them directly to the beneficiary and awaiting the designation of a new representative. The Secretary has promulgated a policy under which payments can be suspended for a period of up to ninety days, although in an undetermined number of cases (including Briggs') payments have been withheld for a substantially longer period.

Briggs, and others similarly situated to him, sued in district court to compel the Secretary to pay their benefits directly to them while they sought a representative, or a replacement for a previous representative. Pierce, and others similarly situated to him, sought a similar order and also sought to compel the Secretary to designate suitable "representatives" for them. The district court certified the appellants as a class under Fed.R.Civ.P. 23 but denied their request for a preliminary injunction. A motions panel of this court subsequently granted a partial stay pending appeal, which enjoined the Secretary from refusing to pay benefits directly to those beneficiaries who had no representatives. Because we conclude that the class met the requirements for a preliminary injunction with respect to the Secretary's failure to make benefits payable directly to Briggs and to the other class members who are not suffering from disabilities stemming from drug or alcohol addiction, we reverse in part and remand to the district court for entry of an appropriate injunction.

## I

The lattice of statutes, regulations and procedures which determines the conditions under which the Secretary awards assistance payments is an intricate, even confusing, one. In this case, indeed, there is an extra level of complexity, for there are two separate statutory schemes, with different criteria governing payment to someone other than the beneficiary ("representative

payment," in the parlance of the Secretary), at issue here. While we shall try to make our discussions as concise as possible, we must sketch the background to this appeal with some detail. We therefore proceed to describe in turn: the statutory and regulatory framework governing representative payment; the effects which the appellants alleged the Secretary's payment policies have on them, and finally the course of litigation to this point.

### A. Representative Payment

The Byzantine system of rules which governs an individual's eligibility for federal assistance payments, and the manner of payment itself, consists of three levels of written directives. Paramount are the federal entitlement statutes themselves; for our purposes we are concerned with certain provisions of the Social Security Act ("the Act"), 42 U.S.C. § 301 et seq., as amended. The next tier is the regulatory one, consisting of formal agency rules promulgated by the Social Security Administration of the Department of Health and Human Services. Finally, and highly relevant in this case, there are the procedural directives of the Social Security Administration's "Program Operations Manual System," known to those who must decipher it as the "POMS." We must discuss each tier in some depth.

There are two types of benefits at issue in this case: Social Security payments, which we term "Title II" benefits, and Supplemental Security Income payments, which we term "Title XVI" benefits.[1] Under the Act, as a general rule, benefits are paid directly to the individual deemed eligible to receive them. However, in cases in which the Secretary determines that the would-be recipient of benefits is unable competently to manage his affairs, or that it is otherwise in "the interest of an applicant entitled to payment," the Secretary can make the benefits' payments to a representative of the actual beneficiary. 42 U.S.C. § 405(j)(1)–(2) (Title II), § 1383(a)(2) (Title XVI). By contrast, for one specific class of payees relevant here, that of indi-

---

1. The designations refer to the applicable titles of the Social Security Act.

viduals who receive Title XVI benefits *because of* a disability due to alcohol or drug dependency, the rule is different. Congress has explicitly required that in every such case, those benefits be paid to a representative of these individuals and not to the recipient directly. 42 U.S.C. §§ 1383(a)(2)(A), 1382(e)(3)(A).

Although they give the Secretary the option of paying benefits to a representative rather than the beneficiary in all but the Title XVI alcohol and drug dependency cases, §§ 405 and 1383 do not describe in any detail a procedure for determining when it is in "the interest of an applicant" to have benefits paid to another person or how such persons should be selected. Accordingly, the Secretary has promulgated regulations governing representative payment procedures. It is important to note at this point that the Act contains no provision or exception excusing the Secretary from making payments to non-alcohol or drug disabled recipients pending appointment or replacement of a representative.

The regulations that the Secretary has promulgated regarding Title II and Title XVI benefits essentially mirror each other. *Compare* 20 C.F.R. §§ 404.2001–404.2065 (1988) *with* 20 C.F.R. §§ 416.601–665 (1988). Each contains provisions detailing: the circumstances under which a representative will be deemed necessary; the process for selecting representative payees, and the responsibilities of representative payees. 20 C.F.R. §§ 404.2001–404.2045, 416.601–45. The regulations also contain a mechanism under which a beneficiary can demonstrate that he no longer needs a representative and can receive benefits directly. 20 C.F.R. §§ 404.2055, 416.655. Additionally, the regulations provide that, in cases in which a beneficiary's current representative has misused funds entrusted to him, has died, wishes to discontinue his service as a representative, or fails to comply with the Secretary's standards in any other way, the Secretary will "try to find a new payee." 20 C.F.R. §§ 404.2050, 416.-650. As is the case with respect to the provisions of Title 42 discussed above, nothing in the Secretary's regulations authorizes the Secretary to withhold or discontinue paying benefits during the period in which he is "find[ing] a new payee," that is, the time when a beneficiary is without a representative.

Finally, we come to the turgid provisions of the POMS. This document, which apparently used to be more simply termed the "Claims Manual," *see Powderly v. Schweicker*, 704 F.2d 1092, 1096 (9th Cir. 1983), is, in the words of the Secretary, the Social Security Administration's "authorized means for issuing written program instructions for adjudicating claims and performing its mission." The POMS portions relevant here parrot the provisions of the Federal Register described above and then, in a section entitled "Payee Selection and Development Issues," go further. POMS section 00504.100 states that, "pending payee development," (a phrase which apparently refers to the period in which a person who has already met the Secretary's substantive criteria for benefits is, for whatever reason, without a representative) the Secretary will "defer[] or suspend[]" benefits for a period of not more than 90 days. However, for beneficiaries who are legally incompetent or who receive Title XVI benefits due to alcohol or drug dependency, payments are deferred or suspended for as long as it takes to locate a satisfactory representative. *Id.* It appears from the POMS that the Secretary has instructed workers in the Social Security field offices to take affirmative efforts to locate representatives for those whose payments have been cut off. *See* POMS sections 00502.300; 00504.100(B).[2]

It is thus clear that the principal practice which appellants seek to enjoin is one mandated, not by statute or rule, but by the POMS. We discuss the significance of this fact *infra*, in Section IIB.

---

**2.** Briggs, Pierce and the other appellants claim that, irrespective of the directives of the POMS, the Social Security field offices actually "shift the burden" of locating representatives to the beneficiaries while payments are suspended. Given the posture of this appeal, we need not and do not express any conclusion with respect to this factual dispute.

## B. No Representative—No Payment

Briggs, Pierce and the other individuals who seek an injunction against the Secretary share two traits. Each has already met the Secretary's requirements for benefits eligibility; that is, each is entitled to receive either Title II or Title XVI benefits (or both). At the same time, since either Congress or the Secretary has determined that benefits cannot be paid directly, and since each presently has no representative payee, none of the appellants is currently receiving the benefits for which the Secretary has himself already determined him (or her) to be eligible.

The record before us, as the one before the district court, includes an extensive collection of affidavits from the appellants themselves, from individuals who operate soup kitchens and homeless shelters, from employees of social service agencies and church groups who seek to assist would-be benefits claimants, and from a dozen employees of Social Security field offices. These affidavits etch a grim image of homelessness and hunger. Rent cannot be paid, and mentally disturbed individuals take up "life" on the streets. Food and other necessities are foregone, causing the precipitous declines in physical and mental health which one might expect.

Claimants who need new representatives for one reason or another, including those who move to a new city and inform the Secretary that an old representative can no longer accept their payments, are told to find another person, or to wait for the field office to find one, if they want to receive their benefits. Faced with a pressing need to find new representatives, many such individuals turn to potentially unreliable characters—the fellow residents of homeless shelters, the most casual acquaintances, or the bartenders who provide alcohol abusers with their daily rations—to serve as their "trustees."

The record reveals what, altogether too frequently, happens next. The new representatives abscond with the beneficiaries' money, or charge them "fees" of up to half of each check. Others, according to the affidavits filed below, will turn over funds only in exchange for sexual services. In some cases, the new representatives are soon judged unfit to serve as payees and payments are withheld once again. After describing this situation in detail, the appellants draw a simple conclusion. It is the one on which their request for injunctive relief rests: no matter how noble the Secretary's objectives in seeking to ensure that those who cannot manage their own affairs have someone competent to take care of their money—temporarily paying the money directly to the beneficiaries, even though they may have some serious disabilities themselves, cannot breed worse consequences than those that attend the deprivation of the funds the disabled claimants so desperately need.

## C. The Suit

Briggs, Pierce and the others who were not currently receiving their benefits filed a complaint in the District Court for the Eastern District of California. They sought a declaration that the Secretary's POMS-based procedure of deferring or suspending benefits violated various provisions of the Social Security Act and contravened the due process clause of the fifth amendment, and that they were entitled to compensation for the benefits improperly withheld. They further sought to have the court certify their suit as a class action, encompassing all adults in California who received Title II or Title XVI benefits and who

either a) have not been or will not be paid their [Title II] or [Title XVI] benefits because they do not have a representative payee; or, b) were not paid their [Title II] or [Title XVI] benefits because the benefits were improperly paid to a person not investigated in accordance with [the Social Security Act].

Finally, plaintiffs sought to have the Secretary enjoined, pending trial, from 1) refusing to pay benefits to eligible individuals who could not find a suitable representative; 2) refusing to provide representatives for those whose Title XVI benefits were grounded in their alcohol or drug dependency; 3) certifying individuals

whose suitability had not been sufficiently investigated from serving as representatives; and 4) refusing to adjust the payments of individuals who had not received all of their previous benefits, due to the actions of unscrupulous, and allegedly uninvestigated, representatives.

After a hearing on the class certification and preliminary injunction requests, the district court issued its order. It provisionally certified the plaintiff class, pending modification or decertification later should it become clear that Briggs and the other named plaintiffs did not fulfill the requirements of Fed.R.Civ.P. 23, or failed to meet some other procedural or jurisdictional requirement.[3] The court adopted the plaintiffs' description of the class, with the exception of its characterization of the Secretary's payment of benefits to individuals not investigated as "improper," which it struck. The court denied the request for an injunction, stating that the plaintiffs had demonstrated "little or no likelihood of success on the merits." In fact, in the court's view, the plaintiffs had failed to show even that "the questions presented [we]re serious enough to require litigation." The court's treatment of the probable injury of the plaintiffs if an injunction were denied was brief. While it stated tersely that it had "fully credited" the plaintiffs' descriptions of the hardships they faced, it saw the merits of the representative payment system, and the public interest in wisely spending public funds, as tipping the balance against the plaintiffs. Finally, it observed that, at least with respect to those plaintiffs who were not wholly destitute, the payment of back benefits, should the plaintiffs in fact prevail, would make any injury they had suffered not irreparable.

The class challenges these determinations, and appeals the order denying the injunction.

II

Before we discuss the reasons for our conclusion that the district court should have granted the class' request for a preliminary injunction in part, we must address an important preliminary concern in some detail. The Secretary claims in a footnote to his brief that the named members of the class failed to present their claims to, and to exhaust their administrative remedies within, the Department of Health and Human Services. Therefore, the Secretary contends, we do not yet have jurisdiction to review the merits of their claims. We now turn to the jurisdictional issue.

A. Jurisdiction, Exhaustion and Futility

In footnote 1 to his brief, the Secretary contends that the appellants failed to satisfy the requirements of presentment and exhaustion of administrative remedies, thus depriving the District Court, and this court, of jurisdiction to hear their claims. We believe that the class has satisfied the presentment requirement and that, for the reasons we explain below, the members of the class should not be required to exhaust administrative remedies before obtaining equitable relief from the courts.[4]

■ The plaintiffs below alleged jurisdiction under several statutes. Since they contended that the Secretary's representative payment practices violated due process, they sought to invoke jurisdiction under the general federal question statute, 28 U.S.C. § 1331. They also contended that district court jurisdiction lay properly under the judicial review provisions of Title II, 42 U.S.C. § 405(g), and Title XVI, 42

---

3. There is no issue with respect to the class certification raised in connection with this appeal.

4. We note that Briggs' complaint, along with its prayers for declaratory and injunctive relief, contained a request for payment of benefits which he alleges were wrongfully paid to representatives whom the Secretary had not adequately investigated. As this aspect of the complaint was not considered by the district court when it ruled on the request for the preliminary injunction, and is not addressed by appellants on appeal, we express no view whether Briggs and the other members of the class must exhaust administrative remedies for retroactive adjustment of benefits before seeking (if necessary) judicial relief.

U.S.C. § 1383(c)(3).[5] Finally, they alleged that the district court possessed mandamus jurisdiction, pursuant to 28 U.S.C. § 1361, to compel the Secretary to construe Title II and Title XVI properly. (We address this contention in detail *infra* at 1142.) As is clear from prior cases and from the Social Security Act itself, federal courts cannot assume jurisdiction over controversies concerning the interpretation of the entitlement provisions of the Social Security Act under the general federal question statute; accordingly, we must determine whether the terms of §§ 405(g) and 1383(c)(3) permit the exercise of jurisdiction here. *See* 42 U.S.C. § 405(h) ("[n]o action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 ... of title 28, United States Code, to recover on any claim arising under [Title II]"); *Weinberger v. Salfi*, 422 U.S. 749, 757–58, 95 S.Ct. 2457, 2463–64, 45 L.Ed.2d 522 (1975) (§ 405(h) deprives the federal courts of general federal question jurisdiction; judicial review of agency decisions must be grounded in § 405(g)) ("*Salfi* ").

The Secretary argues that the district court did not have jurisdiction under §§ 405 and 1383 because the plaintiffs had not exhausted their administrative remedies. He begins this argument with the observation that the judicial review provisions of Title II and Title XVI require that review of a claim under those sections of the Social Security Act await a "final decision" on the claim from the Secretary, and then mandate that a suit be filed within sixty days of the date on which the Secretary mails the notice of that decision. *See* n. 6, *supra; Salfi*, 422 U.S. at 762–63, 95 S.Ct. at 2465–66. The Secretary notes next that there is no allegation in the complaint that the named members of the class (let alone the unnamed claimants whose interests they now represent) have presented their claims or received the final agency action necessary for exhaustion. Nor, the Secretary claims, is there any evidence in the record which demonstrates that these requirements have in fact been satisfied in this case. Finally, the Secretary, while acknowledging that courts may in certain circumstances waive the exhaustion requirement, argues that the appellants have not satisfied the non-waivable presentment requirement or demonstrated any basis for finding waiver of the exhaustion requirement. Although much of what he says is accurate and unobjectionable, we disagree with the Secretary's conclusions, for we have determined that the appellants have presented their claims to the Secretary and that the circumstances described in the record merit judicial attention despite the fact that appellants have not exhausted the normal agency review procedures. In other words, we conclude that waiver is appropriate here.

The Supreme Court has made clear that the requirement of a "final decision" for purposes of judicial review under § 405(g) (and, by explicit incorporation, review under § 1383(c)(3) as well) consists of two elements. The first, which is jurisdictional and therefore cannot be waived, "is the requirement that a claim for benefits shall have been presented to the Secretary." *Bowen v. City of New York*, 476 U.S. 467, 483, 106 S.Ct. 2022, 2031, 90 L.Ed.2d 462 (1986) ("*City of New York* ") (quoting *Mathews v. Eldridge*, 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976)) ("*Mathews* "). The second requirement, which is not jurisdictional and can be waived, is that "the administrative remedies prescribed by the Secretary be exhausted." *Id.* We address presentment first.

---

**5.** 42 U.S.C. § 405(g) states, in relevant part:
Any individual, after a final decision of the Secretary made after a hearing to which he was a party, irrespective of amount in controversy, may obtain a review of such decision by a civil action commenced [in district court] within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.

42 U.S.C. § 1383(c)(3) provides:
The final determination of the Secretary after a hearing ... shall be subject to judicial review as provided in [§ 405(g) ] to the same extent as the Secretary's final determination under [§ 405].

At oral argument, the Secretary acknowledged that each named plaintiff, and every member of the class as certified, has already been adjudged by the Secretary to be eligible for benefits, and need only obtain a satisfactory representative payee in order to receive, or resume receiving, payments. The Secretary then conceded that there is no problem with *presentment* here, since the appellant-beneficiaries have already had their claims for entitlement resolved in their favor, and their benefits have been withheld or suspended only because they lack an appointed representative. We agree. The presentment requirement is satisfied when an individual makes a claim for benefits, and the Secretary determines that the claimant meets the eligibility requirements for those benefits. When benefits are suspended, or when they are not paid to begin with, because of a requirement collateral to the Secretary's eligibility criteria,[6] the claimant's dispute with the Secretary is not, strictly speaking, a "claim for benefits" in the sense in which the phrase was used by the Supreme Court in *Mathews* and *City of New York*. Accordingly, having presented their claims for benefits to the Secretary once already, there was no requirement in this case that the class members "re-present" their claims to the Secretary in order to obtain review of the collateral issue. We can therefore proceed to the question whether, having met the presentment requirement, the class members should be ordered back to the Department of Health and Human Services to exhaust their administrative remedies.

We now turn to the waiver question. Normally, Courts defer to the agency in the first instance, both because of its superior "expertise in administering its own regulations," and because it is generally more efficient to allow the agency, if it can, to resolve disputes concerning the entitlement programs it administers. *See City of New York*, 476 U.S. at 485, 106 S.Ct. at 2032. Thus, we ordinarily require exhaustion of all the normally available administrative remedies, regardless of the number of levels of agency review involved. However, the courts have recognized that "cases may arise where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." *Mathews*, 424 U.S. at 330, 96 S.Ct. at 900. In such cases, the claimant may bypass the agency's complex adjudicative mechanisms, and a court may waive the exhaustion requirement and assume jurisdiction over the matter *ab initio. Id.; see also Heckler v. Ringer*, 466 U.S. 602, 617–18, 104 S.Ct. 2013, 2023, 80 L.Ed.2d 622 (1984) (*"Ringer"*).

The Supreme Court has suggested, and we have applied, a three-part test to determine whether a particular case merits judicial waiver of the exhaustion requirement. Waiver is proper if the claim to be reviewed is " '(1) collateral to a substantive claim of entitlement (collaterality), (2) colorable in its showing that refusal to the relief sought will cause an injury which retroactive payments cannot remedy (irreparability), and (3) one whose resolution would not serve the purposes of exhaustion (futility).' " *Bass v. Social Security Admin.*, 872 F.2d 832, 833 (9th Cir.1989) (*"Bass"*) (quoting *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir.1987) (*"Cassim"*)), *see also City of New York*, 476 U.S. at 483, 106 S.Ct. at 2032 (waiver appropriate where: claim was " 'entirely collateral to [a] substantive claim of entitlement[;]' " " 'full relief [could] not be obtained at a postdeprivation hearing[;]' " and claimant would be harmed " 'in a way not recompensable through retroactive payments.' ") (quoting *Mathews*, 424 U.S. at 330–31, 96 S.Ct. at 900–01).

The government conceded at oral argument that the class members satisfy the first two parts of the *Bass* test. We agree with the Secretary that the decision to require representative payment in the first instance, let alone to suspend payments when a claimant's representative can no longer serve that role, is a matter wholly

---

**6.** The Secretary concedes that the decision to require a representative payee is wholly collateral to the question of a claimant's entitlement to benefits. *Infra* at 1139–1140.

collateral to the claimant's "substantive eligibility for benefits." Similarly, the Secretary admits that the appellants made a sufficient showing that the injuries suffered by those whose benefits have been suspended are "irreparable," that is, that the injured could not be made whole by retroactive payments at some later time. We have previously stated that a "colorable" showing of irreparable injury for purposes of waiver of the exhaustion requirement is one that is not " 'wholly insubstantial, immaterial, or frivolous.' " *Cassim,* 824 F.2d at 795 (quoting *Boettcher v. Secretary of Health and Human Servs.,* 759 F.2d 719, 722 (9th Cir.1985)). Given the circumstances described in the affidavits contained in the record, the Secretary's concession that the appellants have raised, at the least, a not "insubstantial, immaterial or frivolous" claim of irreparable injury is a wise, in fact an inescapable, one. Back payments can have some ameliorative effect; they at least set the Secretary's ledgers straight. Yet they cannot erase either the experience or the entire effect of several months without food, shelter or other necessities. In our view, the appellants' showing was sufficient to meet a far higher standard than "colorable."

The only aspect of the *Bass* test contested by the Secretary is the requirement that the party seeking waiver of the exhaustion requirement demonstrate the futility of pursuing administrative remedies. In contrast to the position advocated by the Secretary, we conclude that the class members have demonstrated the futility of seeking redress within the Department of Health and Human Services in two distinct senses. First, in *Cassim,* we held that a claimant would be deemed to have demonstrated the futility of administrative review if he could show that "[r]equiring him to exhaust administrative remedies would not serve the policies underlying exhaustion." 824 F.2d at 795. Specifically, courts are empowered to find futility where the claimant demonstrates that " 'there [i]s nothing to be gained from permitting the compilation of a detailed factual record, or from agency expertise.' " *Id.* (quoting *City of New York,* 476 U.S. at 485, 106 S.Ct. at 2033).

The members of the class here have made the showings suggested by the Supreme Court in *City of New York* and applied in *Cassim.* Their request—to overturn the Secretary's policy of suspending benefits for up to 90 days (and in some cases longer) when a claimant lacks a representative on the grounds that the policy violates due process and the provisions of Title II and Title XVI—is simple, straightforward, and closely akin to the due process challenge in *Cassim.* In *Cassim;* we found that such a challenge did not represent the type of claim that required the "compilation of a detailed factual record." Similarly, in this case it is difficult to see, and the Secretary has not described, what sort of a detailed record might assist a court in determining the merits of appellants' straightforward statutory and constitutional challenge.

Likewise, and again in line with the reasoning of *Cassim,* we do not see how "agency expertise" weighs in favor of exhaustion here. As we have noted, *supra* at 1135, the principal issue on the merits is whether the Secretary has the authority under the Act to withhold payments because a claimant does not have an authorized representative. The issue posed by the class members is one purely of statutory construction, concerning provisions of a statute which, the appellants claim, are both unambiguous and non-discretionary. Administrative agencies, and the Executive in general, have no particular expertise in construing such statutes. *See, e.g., Chevron, U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984) (*"Chevron"*).

Even if we were less sure that the class members have demonstrated the futility of agency review in a manner similar to that of the claimant in *Cassim,* we would still hold waiver of the exhaustion requirement appropriate in this case, for we believe that the claimants here meet the futility standard in a far more fundamental sense. This conclusion flows directly from three observations. First, the policy which the class members challenge is one that, taking

the Secretary and the POMS at their word, suspends or defers benefits payments for at most 90 days. Second, the policy is one mandated by the highest level of the Department's hierarchy. It is not discretionary but is instead phrased in the most peremptory terms. *See supra* at 1134–1135. Given the origin and character of the directive at issue, we believe it extraordinarily unlikely that an individual claimant could succeed in having the suspension of his benefits lifted by one of the lower echelons of the Secretary's administrative adjudication machine, an apparatus which is the subject of our third observation.

As the Secretary describes it, the administrative review procedure for a claimant who seeks to challenge his—at most 90-day—suspension of benefits has four distinct phases. The claimant must first make his argument to a hearing officer. If he does not prevail, he can move for reconsideration. Then he may seek a hearing before an administrative law judge. If he has not yet prevailed, he may seek review by the Social Security Administration's Appeals Council. Only then, if he still has not succeeded in getting his benefits, may he file suit in district court. By this point, the claimant will no doubt have developed an abiding, personal understanding of the phrase "administrative exhaustion."

There are two obvious problems with requiring the members of the class to proceed through this scenario, problems which conclusively demonstrate the futility of pursuing administrative review in this case. First, under the system advanced to us by the Secretary, *each* member would have to go through the process individually. Each allegedly aggrieved claimant would need to seek redress for himself alone, and there would be no method of representative litigation comparable to the class action instituted in the district court. There would thus be no mechanism through which an individual could attempt to have the challenged POMS provisions invalidated on their face, to the benefit of others situated similarly.

Second, we recall that the policy at issue here is a directive of the Secretary himself. Therefore, as the Secretary concedes, it is reasonable to operate on the assumption that the lower levels of the administrative review process will not rule in favor of any individual claimant, thereby forcing each claimant to proceed in an automation-like manner through several levels of the multi-tiered appeals process to vindicate his right to payment. At the same time, however, if the Secretary follows his own directives, the claimant will begin receiving payments directly at the end of 90 days (if a representative has not been found prior to that time); and his claim will be moot. Since the Secretary has conceded that exhaustion of the normal review process would take a claimant far more than the 90 days at issue here, the failure to waive the exhaustion requirement would ensure that the members of the class suffer the very harm they seek to prevent through this litigation—going for three months without the benefits to which the Secretary has already deemed them entitled. In our view, there can be no more eloquent demonstration of the futility of seeking agency review.[7]

We thus conclude that the members of the class were permitted by §§ 405(g) and 1383(c)(3) to file suit in district court without first exhausting the ordinary remedies available within the Department of Health and Human Services.[8]

7. The argument is slightly different with respect to those Title XVI recipients whose disabilities are alcohol or drug-based and who seek to compel the Secretary to provide representatives for them or, if no representatives can be found, make payments directly to them. In one respect these claimants allege a general, rather than a specific, failure by the Secretary to act and in the other they seek to avoid a statutory prohibition. For purposes of exhaustion, the principles we apply to the bulk of the claimants (those who seek only direct payment of claims under Title II or claims under Title XVI for disabilities that are not drug or alcohol related) are equally applicable here; moreover, they are equally applicable to both aspects of the claim.

8. Although the Secretary seems to treat it as a separate requirement, our decision that the class members were not obliged to obtain a "final decision" from the agency before proceeding to district court also disposes of the requirement that the plaintiffs' complaint be filed within 60 days of that final decision. *See* n. 6, *supra*. It would be absurd, and would require the impossible, for us to hold that a plaintiff

■ We turn briefly to the final basis for jurisdiction asserted by the class, that afforded by the federal mandamus statute, 28 U.S.C. § 1361.[9] The appellants allege that mandamus is an appropriate remedy in this case, and jurisdiction therefore proper under § 1361, on the theory that the Secretary's suspension of the benefits to which they are concededly entitled is a violation of a duty owed to them by the United States. We agree that mandamus jurisdiction is proper here, and that mandamus is a remedy potentially available to the class; we therefore base our holding that jurisdiction was proper in the district court alternatively on § 1361.

We have previously held that mandamus will lie against the Secretary of Health and Human Services (or his predecessor, the Secretary of Health, Education, and Welfare) under § 1361. In *Leschniok v. Heckler*, 713 F.2d 520, 522 (9th Cir.1983), we ruled that § 1361 provided jurisdiction in an action against the Secretary where the plaintiffs alleged that the Secretary had violated his delegated authority to "take Care that the Laws be faithfully executed," Const. Art. II § 3, by unconstitutionally terminating Title II benefits. Similarly, in *Elliott v. Weinberger*, 564 F.2d 1219, 1225–26 (9th Cir.1977), *aff'd in part and rev'd in part on other grounds, Califano v. Yamasaki*, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979), we held that the "traditional limited scope of mandamus" encompassed suits "to compel [the Secretary's] compliance with due process requirements." 564 F.2d at 1226.

The Supreme Court has assumed that mandamus under § 1361 could lie against the Secretary, although it has never been called upon to decide the question definitively. *See Pittston Coal Group v. Sebben*, — U.S. ——, 109 S.Ct. 414, 424, 102 L.Ed.2d 408 (1989); *Ringer*, 466 U.S. at 616, 104 S.Ct. at 2022. The Court has

made clear, however, that mandamus would be appropriate only when a party demonstrated that the Secretary "owe[d] him a clear nondiscretionary duty." *Ringer*, 466 U.S. at 616, 104 S.Ct. at 2022. The contention here is precisely that the Act has imposed upon the Secretary a clear, nondiscretionary duty to pay Title II and Title XVI benefits directly to eligible beneficiaries (except in the case of Title XVI claimants with alcohol and drug-based disabilities) when no representatives exist. The nature of this claim brings the class squarely within the sensible limits described by the Supreme Court. Furthermore, the class members' claim that the Secretary, by issuing the POMS directives which authorized the suspension of payments, violated their constitutional right to due process is closely akin to the claims of the plaintiffs in *Leschniok* and *Elliott*, which we held appropriate for mandamus. Accordingly, we conclude that the district court had original jurisdiction over the class action under § 1361.

With a firm conviction that we have jurisdiction to do so, we proceed now to review the merits of the request for a preliminary injunction.

## B. The Request for Injunctive Relief

■ We begin by describing the considerations which guide our review of every decision of a district court granting or denying a preliminary injunction: the standard of review we apply to the district court's action, and the standards which have evolved to govern the award of injunctive relief itself. Turning first to our review of the district court's order, it is settled that we review the grant and the denial of a preliminary injunction in the same manner. Since the district court's decision to grant or deny a request for a preliminary injunction is a discretionary

must file his complaint within 60 days of the Secretary's final decision in a proceeding to which the claimant was a party when we are not requiring the claimant to obtain such a decision in the first place.

**9.** Section 1361 provides:

**Action to compel an officer of the United States to perform his duty**
 The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or an any agency thereof to perform a duty owed to the plaintiff.

one, "we will reverse [its decision] only if that discretion has been abused." *Hunt v. National Broadcasting Corp.*, 872 F.2d 289, 292 (9th Cir.1989) (*"Hunt"*). However, a district court, in ruling on an injunction request, abuses its discretion: if it does not apply the correct legal standards governing the issuance of injunctions, *Id.;* if it rests its decision on a misapprehension of the underlying substantive law, *Zepeda v. Immigration & Naturalization Serv.*, 753 F.2d 719, 724–25 (9th Cir.1983) (*"Zepeda"*); or if its ruling is grounded on a material finding of fact which we determine to be clearly erroneous. *Zepeda*, 753 F.2d at 725.

■ In this circuit, we do not apply a unitary, fixed test to decide whether a party has demonstrated its entitlement to a preliminary injunction. Rather, we require a party to show "either a combination of probable success on the merits and the possibility of irreparable injury, or that serious questions are raised and the balance of hardships tips sharply in its favor." *Hunt*, 872 F.2d at 293; *see also United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 174 (9th Cir.1987) (*"Odessa Union"*). It is important to bear in mind that these two formulations are really nothing more than descriptions of the two ends of a "sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Odessa Union*, 833 F.2d at 174. In fact, if the balance of hardships sufficiently favors the moving party, a preliminary injunction may be awarded even though the questions raised are only "serious enough to require litigation." *Arcamuzi v. Continental Airlines*, 819 F.2d 935, 937 (9th Cir.1987) (*"Arcamuzi"*).

■ We believe that, with one exception, the groups of claimants who comprise the plaintiff class met the requirements for a preliminary injunction, and that the district court abused its discretion by misapplying the standards governing injunctive relief and by misapprehending the relevant provisions of the Social Security Act. We have already described the findings of the dis-

trict court. *Supra* at 1136–1137. Two aspects of its findings make our review on the merits somewhat more difficult. First, the district court did not explicitly apply the injunction standards we discussed above, choosing instead to make a series of loosely interwoven observations concerning the legal merit of some of the plaintiffs' claims and the type of injury which might be suffered by certain plaintiffs. Second, the court in its analysis did not distinguish among the different groups within the class it had certified, *see supra* at 1137, although its Memorandum and Order reveals that it did appreciate that there were substantial differences in the situations of various groups within the class.

It therefore falls to us to define the various subgroups within the class, and then, by applying the standard we have described, to examine by group the appropriateness of the district court's decision not to award injunctive relief. Accordingly, we render holdings with specific reference to: (1) those who received benefits through a representative and had their benefits suspended when their representative could no longer continue in that role; (2) those who have been declared eligible for benefits but, lacking a representative, have not yet received any benefits; (3) those who received nothing, or less than their entitlements, "because the[ir] benefits were paid to a person not investigated by the Secretary"; and (4) that special class of Title XVI claimants eligible for disability benefits because of alcohol or drug abuse.

(1)

The district court's analysis focused almost exclusively on those claimants who have had benefits suspended because, for one reason or another, their representative can no longer continue to receive payments for them. With respect to these individuals, who may well represent the bulk of the class, the district court determined that the plaintiffs had demonstrated "little or no likelihood of success on the merits," and that, at least those claimants not wholly destitute, had failed to demonstrate that their injuries were irreparable. We deal

with the "success on the merits" aspect of the court's decision first.

In concluding that the plaintiffs had little chance to prevail, the district court appears to have relied heavily on its assumption that the representative payment provisions of 42 U.S.C. §§ 405(j), 1383(a)(2)(A) are "broad and discretionary." The assumption is highly dubious, if not clearly erroneous. The provisions in question are, by their terms, discretionary only in that they allow the Secretary to choose *between* representative and direct payment. The Act does not authorize any period of non-payment. Nor do the Social Security Administration's formal regulations authorize the deferment or suspension of payment.[10] It is only from the POMS, a manual promulgated by the Secretary without Congressional authorization or the protections surrounding formal rule making afforded by the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, that Social Security field offices derive the authority to suspend payment. Given these circumstances, it seems to us clear that the plaintiffs have demonstrated at the very least that a "serious question" exists concerning the validity of the Secretary's 90–day suspension policy. *See Hunt*, 872 F.2d at 293. In fact, we conclude that they have done more than that; they have demonstrated a probability of success on the merits.

The district court also relied on an unpublished decision approving a settlement agreement, and a passage in a Supreme Court decision to support its view that the plaintiffs could not succeed on the merits of their claims. The unpublished decision, which the Secretary has included in the record, approved a settlement between the Secretary and a group of benefits claimants in Illinois, under which the Secretary agreed to amend the POMS to enact the 90–day limit on benefits suspension which we consider here. *Langson v. Regan*, No. 76 C. 1668 (N.D.Ill. June 8, 1982). While the district court was certainly entitled to examine the *Langson* settlement in fram-

ing its sense of the legal merit of the claims of the plaintiffs here, it does not seem to us to be that significant. The fact that a group of claimants agreed not to pursue their litigation if the Secretary agreed to limit the suspension of benefits to 90 days says little about the legal validity of the Secretary's new policy. Similarly, the district court's decision in *Langson* to allow the parties to settle their case on mutually amicable terms is hardly equivalent to a substantive decision on the statutory authorization or constitutionality of the 90–day suspensions, which is what the class requests here.

We also believe that the district court's reliance on the Supreme Court's statement in *Heckler v. Day*, 467 U.S. 104, 119, 104 S.Ct. 2249, 2257, 81 L.Ed.2d 88 (1984), that courts should not impose deadlines on the Secretary's decisions to approve claims, was misplaced. In *Day*, the Supreme Court was construing a statute, 42 U.S.C. § 405(b), which in the Court's own words guaranteed a party who had been denied benefits a right to a hearing "within a reasonable time." 467 U.S. at 108, 104 S.Ct. at 2252. The Court decided that the Secretary rather than courts should give substantive content to the notion of "reasonable time," given the general rule that a court defers to an agency's interpretation of statutes which are ambiguous or afford the agency discretion. *Id.* at 118, 104 S.Ct. at 2257; *see also Chevron*, 467 U.S. at 844–45, 104 S.Ct. at 2783. Here, however, the appellants' claim is different. They are not asking the court to substitute its judgment of what constitutes a "reasonable" period of time for suspending benefits payments for the judgment of the Secretary; they are asking the court to enjoin the Secretary because his decision to suspend benefits *for any length of time at all* is barred by the unambiguous language of the statute and is unconstitutional. They do not contend that the Secretary's discretionary judgment was wrong; they claim

---

10. We refer in this paragraph to the principal issue only—the question whether payments may be withheld or suspended for lack of a representative in cases other than Title XVI claims for benefits based on disabilities that are alcohol or drug related. We discuss the remaining issues separately.

he has no discretion under the statute to make any judgment in the first place. If the characterization of the Act proffered by the plaintiffs is correct, and we need not go so far as to resolve that question on the merits, *Odessa Union*, 833 F.2d at 174, deference to the Secretary's directives would be inappropriate. *See Chevron*, 467 U.S. at 842–43 & n. 9, 104 S.Ct. at 2781 & n. 9 (where statute is clear, court need not defer to agency interpretation, but must give statute its proper effect).

As a final aspect of our consideration of the likelihood of the plaintiffs' success on the merits, we note that we find persuasive their contention that nothing in the representative payment provisions of the act tempers the Secretary's basic responsibility to pay benefits to those deemed eligible for them.[11] The representative payment provisions are not grounded in general notions of fiscal responsibility. They are intended to ensure that a beneficiary's money is spent for his own benefit. Accordingly, relying on the provisions to *avoid* paying *any* benefits is at least in principle at odds with the Secretary's essential duty under title 42—distributing benefits to those who he determines need them. We are thus of the view that the district court misapprehended the substantive law to be applied when it determined that the plaintiffs had not demonstrated even a "question[ ] serious enough to require litigation." *Arca-muzi*, 819 F.2d at 937.

Our conclusions are similar with respect to the district court's assessment of the balance of hardships. The court stated little more than that claimants who were not destitute could be compensated later through retroactive payment if they ultimately prevailed in their suit. The Secretary makes much of this finding in his brief on appeal, although this position would seem fundamentally inconsistent with his statement at oral argument that, for purposes of exhaustion anyway, the harm suffered by those who had had their benefits suspended was in fact "irreparable," that

is, "an injury which retroactive payments cannot remedy." *Supra* at 1139; *see Bass*, 872 F.2d at 833.

There are two more serious problems with the district court's statement. First, it is patent from the record that many of those whose payments have been suspended *are* destitute. They live on the streets, eat only what charity offers them and have no money with which to provide for other basic needs. Thus, it would seem that, even under the court's view that being "destitute" had some conclusive significance for determining the balance of hardships, relief was appropriate for at least a substantial portion of the class. Second, we believe that the district court erred in failing to consider explicitly the hardships suffered by those who were not wholly destitute. The Supreme Court in *Mathews* instructed that withholding benefits from anyone whose condition fostered a "dependency upon ... disability benefits" might cause an injury unrecompensable through retroactive payment. 424 U.S. at 331, 96 S.Ct. at 901. Moreover, in assessing the injury caused by deprivations of federal benefits, we look to claimants' individual dependency on the benefits, and the potential injury incurred by losing those benefits, and not to general considerations of whether they would be rendered wholly destitute, or merely greatly deprived, if their benefits are withheld. *See, e.g., Paxton v. Secretary of Health and Human Servs.*, 856 F.2d 1352, 1354–55 (9th Cir. 1988).

The Secretary has not alleged that any substantial hardship would befall him if he were enjoined from withholding payments to the members of the class who temporarily do not have representatives. In stark contrast, the class members have described in detail the hardships that they suffer when the Secretary suspends their benefits. *Supra* at 1136. The Secretary does say that paying the benefits to persons who need representatives may be doing them a disservice or that in the long run some of those persons will be better off if

---

11. In this context, we reiterate the significance of the Secretary's candid admission that the decision to require representative payment is wholly collateral to a claimant's eligibility for, or the Secretary's decision to award, benefits. *See supra* n. 6 and p. 1139–40.

payment of benefits is suspended. We think this argument is insufficient to carry the day. It is simply too speculative and theoretical to overcome the real and immediate hardships so graphically set forth in affidavit form by the plaintiffs and others. Accordingly, we conclude that the district court abused its discretion in not recognizing the degree to which the balance of hardships favors the class members here—although we note that all that would have been required for an injunction to issue would have been the recognition that there was a "possibility" of irreparable injury. In any event, we hold that, pending the outcome of the proceedings on the merits, the Secretary should be enjoined from withholding payments to claimants who are temporarily without representatives (and whose Title XVI benefits are not based on alcohol or drug-relate disabilities) and that the Secretary must pay benefits directly to these claimants, until either he or the claimants locate suitable new representatives.

### (2)

Our discussion of the next two groups of class members is substantially more abbreviated, for much of what we have already said applies with equal force to them. For those in what we have termed the second group—individuals who have been deemed eligible for benefits but have not yet found a suitable representative, or had a representative approved—our conclusions are almost exactly the same as those described above. Here again, the plaintiffs have shown at the very least a "serious question" as to whether §§ 405(j) and 1383(a)(2)(A) allow the Secretary to withhold the payments of those otherwise eligible for benefits. Here again, the hardships tips decidedly in the plaintiffs' favor. It appears from the record that many of the individuals in this group are those who appear literally on the doorsteps of churches, homeless shelters and social service groups, are fortunate to come into contact with someone willing to start them

on the process of applying for Title II or Title XVI benefits, but cannot immediately find anyone to serve as their representative. The only sort of argument under which we could deem the harm to these people in not getting benefits to be less "irreparable" than the harm which befalls those who have benefits and then lose them would be one which begins with the fact that many of the claimants in this group are already destitute, and concludes with the assertion that a little more time in such a state is not so bad. Fortunately, the Secretary has not advanced such an argument and we decline to take so Dickensian a view of the plight of our fellow human beings.

Consequently, we hold that the Secretary is enjoined from withholding benefits to those individuals deemed eligible for them but who have not yet found a representative, or for whom no representative has yet been approved.[12] Until representatives are found and approved, and again pending the outcome of the proceedings on the merits, the Secretary must pay benefits directly to the eligible claimants in this group.

### (3)

The third group within the plaintiff class consists, in the words of the district court's Rule 23 certification order, of those claimants who "were not paid their [Title II] and/or [Title XVI] benefits because the ‘benefits were paid to a person not investigated by the Secretary." These are the individuals described *supra* at 1136 whose payments were retained, in whole or in part, by unscrupulous representatives. We are unable to find any independent consideration of the appropriateness of granting injunctive relief on behalf of these claimants in the district court's Memorandum and Order, and must therefore analyze the request for relief on their behalf independently.

We should make clear that, in ruling that the plaintiffs are entitled to an injunction on behalf of this group of claimants as well, we do not express any view on the

---

**12.** By this time, it should go without saying that claimants whose Title XVI benefits are based on alcohol or drug-related disabilities are not included in this aspect of our holding.

Secretary's obligation to make financial payments to these claimants to compensate for past losses, should a court ultimately rule that the Secretary improperly paid benefits to representatives whom he did not adequately investigate. *See supra* at 1134. Instead, we make two limited observations to support our holding. First, we believe that these plaintiffs have carried their burden of demonstrating at least that a substantial question exists as to the legality of the Secretary's actions in paying benefits to individuals whom he apparently did not first investigate, as he was required to do by his own regulations. *See* 20 C.F.R. §§ 404.2020–404.2025; 416.620–416.-625; *supra* at 1135; *see also Hunt*, 872 F.2d at 293. Second, we incorporate our discussions in parts (1) and (2) above concerning the relative hardships and potential injuries to the claimants and conclude that this group has as well made a showing of hardship and injury which, when coupled with the substantial question they have raised as to the merits, suffices to warrant injunctive relief.

The relief we order here is extremely limited, both legally and practically. As a practical matter, many of the claimants already in this group may also be members of the first group discussed above and will be covered by a different part of the injunction, for it appears that individuals who discover that the representative is stealing from them often (not all that surprisingly) quickly discharge them and are, consequently, left temporarily without representatives. Nevertheless, for those who will be affected by this aspect of the injunction, we hold only that the Secretary should be enjoined from paying benefits in the future to any putative representative who has not been investigated according to, and has not met the requirements of, his own regulations and POMS procedures.[13]

### (4)

We have by this point addressed all members of the class as certified with one cate-gorical exception—those claimants who receive Title XVI benefits *because of* alcohol or drug caused disabilities. The appellants recognize that the statute directs the Secretary to pay benefits intended for claimants who fall into this category to a representative. 42 U.S.C. § 1383(a)(2)(A). They thus seek initially to compel the Secretary to find payees for these claimants. They do not describe, or even suggest, precisely how the Secretary will find these payees, nor do they take issue with the Secretary's assertion that, under the current regime, he attempts to find representatives for claimants whose benefits stem from drug or alcohol abuse. *See supra* at 1135, POMS section 00502.0020(B)(2) ("[o]nce the medical determination of drug addiction/alcoholism has been made, develop [sic] immediately for [a representative payee]").

It appears, then, that with respect to those who are barred by statute from receiving Title XVI payments without a representative, the dispute between the class and the Secretary essentially concerns the vigor with which the Secretary looks for representative payees. The Secretary claims to be doing all that he can to find payees; the class claims that he could do more. While the class may ultimately prove at trial that the Secretary has not fulfilled his self-imposed obligation to find payees for those for whom receiving Title XVI benefits depends on finding a representative, we believe that injunctive relief in favor of these claimants is not supported by the record. While we acknowledge that the individual claimants in this group may well suffer hardships similar to those who will benefit from the injunction, given the clear statutory mandate from Congress and the Secretary's statements that he is already attempting to find representatives for these claimants, we cannot conclude that district court abused its discretion in denying the preliminary injunction in this respect.[14]

---

**13.** Our holding with repect to this group similarly excludes the special class of Title XVI beneficiaries whose benefits cannot by statute be paid directly. *See* n. 11, *supra*.

**14.** The final group of claimants also seeks direct payment on the ground that the Secretary has failed to provide representatives to receive the benefit checks. The argument is initially one of due process. The claimants assert a statutory

Conclusion

We affirm the district court's denial of a preliminary injunction for claimants barred by the explicit terms of § 1383(a)(2)(A) from receiving Title XVI payments without a representative. We reverse the district court's denial of a preliminary injunction in favor of those other claimants whose Title II or Title XVI benefits: have been suspended for lack of a representative payee; have not yet begun to be paid because no representative yet exists; or who have had benefits paid to representatives whom the Secretary did not investigate. With respect to these claimants we remand to the district court with instructions to enter an injunction consistent with our directives and holdings in parts II B(1)–(3) of this opinion. Any injunction shall be prospective only unless the district court, upon request of plaintiffs and after a hearing, decides to order payments of some or all of any back payments sought.[15]

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS

---

entitlement to the funds and contend that the Secretary's arbitrary failure to act serves to deprive them of their property. The remedy, they say, notwithstanding the specific terms of the statute, is to order direct payment. We would reach this question only if we concluded that the Title XVI plaintiffs with drug or alcohol based disabilities were entitled to an injunction based on the Secretary's failure to perform his statutory duties. Since our conclusion is the opposite, we need not consider the question whether an order for direct payment would constitute a proper or lawful remedy.

**15.** There is one small group of individuals who, while they may be members of the certified class, should not, in our view, be permitted to receive their Title II or Title XVI payments directly. The group is comprised of those individuals who have been the subject of a determination of legal incompetence. We do not think it proper, at this stage of the proceedings at least, to require the Secretary to pay benefits directly to people who have been legally determined to be unable to manage their own affairs. For this small group, then, the Secretary may adhere to his current course of conduct, which by regulation requires representative payment for each beneficiary who has been declared legally incompetent. *See* 20 CFR §§ 416.-610(a)(1) and 404.2010(a)(1).