Robert MARTYR, Plaintiff,

v.

George BACHIK, et al., Defendants.

Civ. No. 90–1086–FR.

United States District Court,
D. Oregon.

Jan. 17, 1991.

Spencer M. Neal, Ginsburg, Gomez & Neal, Portland, Or., for plaintiff.

Dave Frohnmayer, Atty. Gen., Kendall M. Barnes, Asst. Atty. Gen., Salem, Or., for defendants.

## OPINION

FRYE, Judge:

The matters before the court are the motions of plaintiff, Robert Martyr:

1) for a preliminary injunction (# 8) prohibiting defendants, George Bachik, Alice Shannon, A. Furqan, D. Hillyer, and C. Jeter, from a) opening, reading, confiscating or delaying the delivery of Martyr's mail; and/or b) opening, reading, confiscating or delaying the delivery of Martyr's mail without first giving him notice of the proposed interference and an opportunity to challenge it; and

2) for an order striking defendants' memorandum in opposition to the motion for preliminary injunction (# 15) for failing to comply with L.R. 220–4 and L.R. 220–7(b).

## UNDISPUTED FACTS

Martyr is a patient/resident of the Oregon State Hospital (OSH), which is located in the City of Salem, Oregon. He has been under the jurisdiction of the Psychiatric Security Review Board of the State of Oregon since 1977. He is confined to a high security building and may not leave the grounds of the Oregon State Hospital. George Bachik is the superintendent of the OSH. Dr. Alice Shannon is Martyr's treating physician. Furqan, Jeter and Hillyer are nurses at the OSH.

On April 16, 1990, Bachik approved a restriction that was requested by Dr. Shannon on the right of Martyr to send mail. Bachik's written approval of the restriction on the right of Martyr to send mail provides, in relevant part:

> In accordance with OAR 309–102–005(6)(d), all mail prepared by OSH patient no. 46888 [Martyr] that contains written materials that are detrimental to the treatment of OSH patient no. 46888 are hereby declared a prohibited item.
>
> In accordance with OAR 309–102–020, Forensic Psychiatric Program staff are authorized to open all mail of OSH patient no. 46888 in the presence of the patient. All mail shall be inspected daily to determine the presence of a prohibited item. Mail which includes prohibited items shall be confiscated by Forensic Psychiatric Program staff, in accordance with OAR 309–102–015. Once confiscated, these prohibited items shall be handled in accordance with OAR 309–108–015(6). It is imperative that these procedures outlined in the above cited rules be strictly adhered to by all staff.
>
> Mail that does not include prohibited items and legal mail are excluded from confiscation.

The treatment plan for Martyr provides as follows:

> Mr M is sending mass mailings into the community that are seen as upsetting and threatening by individuals in the community. This is his method of avoiding treatment to deal with his anger associated with his placement in OSH and his jurisdiction under the PSRB.
>
> Patient will be able to deal with anger in the treatment setting (with CM/MD/RN/PHD) not thru [sic] the community upset.
>
> Pt will be able to discuss with Cm anger and reduce level his agitation in the treatment setting rather then ventilating

anger thru [sic] mass mailings daily in one month.

1. inspect outgoing mail for fearful and threatening material each day by RN (48C) Staff RN

. . . .

3. mail that is confiscated OAR 309.-102–015 sub 2, 3, 4, 5, 6, 7 date, name, material, signature of authority, one copy to the patient one copy to the chart. Keep in the drawer and then long term storage.

Exhibit B to Plaintiff's Motion for Preliminary Injunction, p. 1 (Addendum to IDT Treatment and Care Plan for Martyr).

A log of the outgoing mail of Martyr from May 14, 1990 to November 12, 1990 shows that Martyr has submitted for mailing 537 items, 153 of which were withheld by the defendants pursuant to the treatment plan for Martyr. According to the log of outgoing mail, the letters withheld by the defendants pursuant to Martyr's treatment plan include letters to:

1) long-time correspondents of Martyr (Affidavit of Roscoe West, Plaintiff's Exhibit C, and Defendants' Exhibit 2, p. 4);

2) Martyr's attorney in this action, Spencer Neal (however, the letter was not identified as a letter to an attorney on the envelope) (Defendants' Exhibit 2, p. 6);

3) at least two other attorneys, which were labeled as such (Defendants' Exhibit 2, p. 19);

4) Robert Joondeph, the head of the Oregon Advocacy Center (Defendants' Exhibit 2, pp. 24 and 25);

5) the Oregon Alliance for the Mentally Ill (Defendants' Exhibit 2, p. 11);

6) elected officials, including David Duke (Defendants' Exhibit 2, p. 12), Denny Smith, Mark Hatfield and Robert Packwood (Defendants' Exhibit 2, p. 14); and

7) an Oregon State Police detective (Defendants' Exhibit 2, p. 16).

The letters that Martyr writes contain outrageous accusations and lurid language relating to his treatment at the OSH. Martyr has not attempted to send a letter advocating or threatening violence or illegal activities. The material he has attempted to send through the mail does not fall outside the protections of the First Amendment to the United States Constitution.

## CONTENTIONS OF THE PARTIES

Martyr contends that the restriction imposed by the defendants on his outgoing mail infringes his rights under the First and Fourteenth Amendments to the United States Constitution. He seeks an order preliminarily enjoining the defendants from censoring, opening or interfering with his mail.

Defendants contend that the monitoring of the outgoing mail of Martyr is consistent with the treatment plan which his physician has developed for him. The treatment plan involves training Martyr to focus and confront his anger during treatment sessions rather than focusing it on other people and venting it by writing to these other people. Defendants contend that any diminution of the first amendment rights of Martyr that results from this restriction is valid and necessary because of Martyr's confinement and his need for treatment.

## APPLICABLE STANDARD

The Ninth Circuit does not apply a unitary fixed test to decide whether a party has demonstrated its entitlement to a preliminary injunction. *Briggs v. Sullivan*, 886 F.2d 1132, 1143 (9th Cir.1989). The party seeking the injunction must show either 1) a combination of probable success on the merits and the possibility of irreparable injury; or 2) that serious questions are raised and the balance of hardships tips sharply in its favor.

These are not separate tests, but rather two ends of a "sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.* (quoting *United States v. Odessa Union Warehouse Co-op.*, 833 F.2d 172, 174 (9th Cir.1987)). If the balance of hardships strongly favors the moving party, a preliminary injunction may be granted even though the questions raised are only serious enough to be litigated. *Briggs* at 1143.

■ Where the moving party seeks a preliminary injunction that goes beyond maintaining the status quo *pendente lite*, courts should be extremely cautious and should not grant relief unless the facts and the law clearly favor the plaintiff. *Committee of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1441 (9th Cir.1986).

## ANALYSIS AND RULING

### Balance of Hardships

The First Amendment serves not only the needs of the polity but also those of the human spirit—a spirit that demands self-expression. Such expression is an integral part of the development of ideas and a sense of identity. To suppress expression is to reject the basic human desire for recognition and affront the individual's worth and dignity.

*Procunier v. Martinez*, 416 U.S. 396, 427, 94 S.Ct. 1800, 1818, 40 L.Ed.2d 224 (1974) (J. Marshall, concurring).

■ Martyr is confined in a high security building at the OSH and is not permitted to leave the hospital grounds. His primary means of communicating with people outside the OSH is by writing letters. The hardship to him that the restriction imposes is great. Each time one of his letters is withheld from the mail, Martyr loses his ability to express himself and to communicate with others.

The hardship which the defendants will suffer if the court grants Martyr's motion for a preliminary injunction is the loss of the ability to treat Martyr effectively. Affidavit of Alice Shannon, M.D., p. 3.

### Probability of Success on the Merits

Martyr was committed to the OSH after he was found not guilty of criminal charges by reason of insanity. The confinement of Martyr is analogous to incarceration after conviction of criminal charges. Therefore, the court will borrow from the jurisprudence of prisoner cases.

Any form of involuntary confinement, whether incarceration or involuntary commitment, may necessitate restrictions on the right to free speech. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125, 97 S.Ct. 2532, 2537–38, 53 L.Ed.2d 629 (1977). The United States Supreme Court has articulated a test to be applied for determining the conditions under which the censorship of inmate mail is warranted. *Procunier v. Martinez*, 416 U.S. at 414, 94 S.Ct. at 1812, *rev'd in part*, *Thornburgh v. Abbot*, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989).[1]

■ That test is:

Censorship of prisoner mail is justified if the following criteria are met. First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression. Prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements. Rather, they must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation. Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved. Thus a restriction on inmate correspondence that furthers an important or substantial interest of penal administration will nevertheless be invalid if its sweep is unnecessarily broad.

*Procunier* 416 U.S. at 413–14, 94 S.Ct. at 1811–12.

Defendants have met the first prong of the *Procunier* test—that is, the censorship of Martyr's mail relates to the interest of the defendants in rehabilitating Martyr. The second prong of the *Procunier* test requires that the restriction be no greater than is necessary or essential to the state's

---

**1.** Although the Supreme Court later adopted a different test for censorship of *incoming* mail because of security concerns within a prison, *Thornburgh*, 490 U.S. at 412–15, 109 S.Ct. at 1881–82, the test for censorship of *outgoing* prisoner mail announced in *Procunier* remains valid.

interest in rehabilitating Martyr. *See Procunier* at 413–14, 94 S.Ct. at 1811–12.

 The outgoing mail of Martyr is censored for "fearful and threatening" material. The restriction has been applied to letters to attorneys and elected public officials. Letters to attorneys are entitled to protection from censorship under both the first amendment and the attorney-client privilege. Letters to elected public officials are entitled to protection from censorship under the first amendment right of free speech and the right to petition the government for a redress of grievances.

The question of what restrictions may be imposed by the state on mail sent by a patient confined to a state mental hospital when that mail does not advocate violence or illegal activity or contain threatening material is a serious and complicated one— even when the goal of the restriction is therapeutic. Under the test articulated in *Procunier*, the breadth of the restriction that the defendants have placed on the outgoing mail of Martyr and the procedure by which those restrictions are implemented may violate his rights under the First and Fourteenth Amendments to the United States Constitution.

However, Martyr seeks preliminary and permanent injunctive relief which would prohibit the defendants from placing *any* restrictions whatsoever on his mail. Such an order would prevent the defendants from imposing even valid restrictions which are a necessary result of involuntary confinement. *See Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125, 97 S.Ct. 2532, 2537–38, 53 L.Ed.2d 629 (1977). Because the relief he seeks is too broad, Martyr is not entitled to the preliminary injunction he seeks in this motion.

## CONCLUSION

Martyr's motion for a preliminary injunction (# 8) is denied. Martyr's motion to strike (# 15) is denied.