**ALEXANDER & ALEXANDER BENEFITS SERVICES, INC., a New Jersey corporation, Plaintiff,**

**v.**

**BENEFIT BROKERS & CONSULTANTS, INC., an Oregon corporation, and Donald J. Econe, Nancy G. Hajjarizadeh, a/k/a Nancy Griffis, a/k/a Nancy G. Hawkins, William D. Lovejoy and Julie A. Lauria, individuals, Defendants.**

**Civ. No. 90–884–FR.**

United States District Court, D. Oregon.

Feb. 6, 1991.

Rodney E. Lewis, Jr., Davis Wright Tremaine, Portland, Or., Arthur J. Schwab, Pamela A. McCallum, Reed Smith Shaw & McClay, Pittsburgh, Pa., for plaintiff.

Peter H. Koehler, Jr., Allan M. Garten, James C. Loy, Tonkon, Torp, Galen, Marmaduke & Booth, Portland, Or., for defendants Benefit Brokers & Consultants, Inc. and Donald J. Econe.

Frank G. MacMurray, Jr., Greene & Markley, P.C., Portland, Or., for defendants Nancy G. Hajjarizadeh a/k/a Nancy Griffis a/k/a Nancy G. Hawkins, William D. Lovejoy and Julie A. Lauria.

## OPINION

FRYE, Judge:

The matter before the court is the motion (# 35–1) of the plaintiff, Alexander & Alexander Benefits Services, Inc. (A & A), for a preliminary injunction against the defendants, Benefit Brokers & Consultants, Inc. (BB & C) and Donald J. Econe, Nancy G. Hajjarizadeh aka Nancy Griffis aka Nancy G. Hawkins (Hawkins), William D. Lovejoy and Julie A. Lauria.

## FINDINGS OF FACT

A & A is a New Jersey corporation with its principal place of business in the State of New York. A & A maintains offices at Suite 3700, 111 S.W. Fifth Avenue, Portland, Oregon. BB & C is an Oregon corporation, which maintains offices at 111 S.W. Columbia Street, Portland, Oregon.

A & A is in the business of assisting employers in identifying, designing and implementing benefits programs for their employees, including health insurance and retirement plans. A & A provides its major customers with administrative manuals, employee booklets, and monthly reports, as well as with information concerning the potential impact of pending legislation on their companies.

A & A employs "producers" to call on prospective customers, to determine the employee benefits needs of these customers, and thereafter to design employee benefits brokerage services and products for them. The producer is the primary contact that A & A has with a new customer. The producer is responsible for fully understanding the employee benefits needs of the customer.

A & A also employs "account handlers" to service existing customers of A & A. An account handler is the primary contact between A & A and its customers. Account handlers are responsible for servicing the day-to-day administrative needs of the customers of A & A, including answering questions about insurance coverage and the submission of insurance claims.

A & A hired defendant Donald J. Econe as an employee benefits representative more than twenty years ago. During this time, he received promotions and salary increases on a regular basis. The last position Econe held with A & A was the position of managing vice president of the Portland benefits office. In this position, Econe had primary responsibility for the management and operations of the Portland office of A & A.

A & A hired defendant William D. Lovejoy in 1974 to work in the Portland office of A & A as an employee benefits representative. He was subsequently promoted to the position of vice president, a position with executive and administrative duties, including the responsibility for developing new business and servicing existing accounts.

A & A hired defendant Nancy G. Hajjarizadeh Hawkins on June 24, 1985 as a senior insurance clerk. She was thereafter promoted to the position of account executive —i.e. the administrative manager of the Portland office of A & A.

A & A hired defendant Julie Lauria on January 2, 1987. She was thereafter promoted to the position of account handler.

In May, 1990, Econe told Lovejoy of his plans to terminate his employment with A & A and to start BB & C. Econe offered Lovejoy a position with BB & C. Econe and Lovejoy entered into negotiations relating to Lovejoy's future employment with BB & C. These negotiations continued until Lovejoy terminated his employment with A & A to join BB & C in August, 1990.

Econe also told Hawkins of his intent to terminate his employment with A & A and to start BB & C. Econe offered Hawkins a position with BB & C at least three months before Econe terminated his employment with A & A.

On August 8, 1990, Econe offered Victoria Williams a position with BB & C. At this time, both Econe and Williams were employed by A & A.[1]

On August 13, 1990, Econe offered Lauria a position with BB & C. At this time, both Econe and Lauria were employed by A & A.

Econe, Hawkins, Lovejoy and Lauria were the four "key" employees out of the five persons employed by A & A in its Portland office. None of the defendants has signed a covenant not to compete with A & A. Econe, Hawkins, Lovejoy and Lauria terminated their employment with A & A between August 14, 1990 and August 18, 1990 without notice to A & A. The terminations were effective immediately.

Econe, Hawkins, Lovejoy and Lauria became employed by BB & C immediately after they terminated their employment with A & A. BB & C is an employee benefits brokerage firm that provides services similar to those provided by A & A. Econe is the president of BB & C, Lovejoy and Hawkins are vice presidents of BB & C, and Lauria is an account executive for BB & C.

In preparation for terminating his employment with A & A, Econe notified numerous clients of A & A of his intent to resign from A & A and to establish a benefits brokerage firm in competition with A & A.

In preparation for terminating his employment with A & A, Lovejoy sent a letter to United Artists Entertainment Company, a client of A & A, which was printed on a letterhead bearing the name "Benefit Brokers & Consultants." The letterhead included the future address of BB & C. This letter was sent in response to material sent by United Artists Entertainment Company to A & A.

## CONTENTIONS OF THE PARTIES

A & A contends 1) that Econe, Hawkins and Lovejoy, while employed by A & A, solicited other employees of A & A to join them in moving to BB & C; 2) that Econe, while still employed by A & A but acting on behalf of BB & C, solicited the business of the most important clients of A & A; 3) that Econe, Hawkins, Lovejoy and Lauria made improper use of the resources of A &

---

1. Williams declined the offer.

A in establishing BB & C; and 4) that Econe, Hawkins, Lovejoy and Lauria secretly copied confidential books, records and customer files belonging to A & A and took that information with them to BB & C.

A & A asks this court to enjoin BB & C and Econe, Hawkins, Lovejoy and Lauria from doing business with former clients of A & A because 1) A & A has demonstrated a substantial probability of success on the merits of its underlying claims for unfair competition, misappropriation of confidential information and trade secrets, tortious interference with business relationships, diversion of corporate opportunity, breach of fiduciary duty, and civil conspiracy; and 2) A & A will suffer irreparable injury if injunctive relief is not granted.

BB & C contends 1) that Econe, Hawkins, and Lovejoy did not impermissibly solicit their co-workers at the A & A office; 2) that Econe did not, on behalf of BB & C, solicit customers of A & A prior to his move to BB & C, but only advised the customers of A & A of his intent to leave A & A and to establish a competing business, BB & C; 3) that Econe, Hawkins, Lovejoy and Lauria made only minimal use of the resources of A & A in establishing BB & C, and that this minimal use does not support injunctive relief; and 4) that Econe, Hawkins, Lovejoy and Lauria did not take the confidential documents that A & A alleges were taken.

BB & C argues that the injunctive relief requested by A & A should be denied because 1) A & A is not likely to succeed on the merits of its claims; and 2) the injury, if any, to A & A is not irreparable, but can be compensated with money damages.

## APPLICABLE LAW

The Ninth Circuit does not apply a unitary fixed test to determine whether a party has demonstrated its entitlement to a preliminary injunction. *Briggs v. Sullivan*, 886 F.2d 1132, 1143 (9th Cir.1989). The party seeking the injunction must show either 1) a combination of probable success on the merits and the possibility of irreparable injury; or 2) that serious questions

are raised and the balance of hardships tips sharply in its favor.

These are not separate tests, but rather two ends of a "sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.* (quoting *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 174 (9th Cir.1987)). If the balance of hardships strongly favors the moving party, a preliminary injunction may be granted even though the questions raised are only serious enough to be litigated. *Briggs* at 1143.

## ANALYSIS AND RULING

### 1. *Probability of Success on the Merits*

The substantive claims of A & A against BB & C and Econe, Hawkins, Lovejoy and Lauria are 1) that Econe, Hawkins, Lovejoy and Lauria engaged in unfair competition with A & A by violating their fiduciary duties to A & A; 2) that Econe, Hawkins, Lovejoy, Lauria and BB & C misappropriated confidential information and trade secrets that belonged to A & A; 3) that Econe, Hawkins, Lovejoy and BB & C tortiously interfered with the business relationships of A & A and the employees of A & A; 4) that Econe, Hawkins, Lovejoy, Lauria and BB & C tortiously interfered with the business relationships of A & A and the customers and insurance carriers of A & A; 5) that Econe, Hawkins, Lovejoy, Lauria and BB & C diverted corporate opportunities which belonged to A & A; and 6) that Econe, Hawkins, Lovejoy, Lauria and BB & C acted together to commit illegal acts constituting a civil conspiracy against A & A.

A. Did Econe, Hawkins or Lovejoy breach their fiduciary duties to A & A by impermissibly soliciting employees of A & A to terminate their employment with A & A?

Under the laws of the State of Oregon, which are the laws applicable here, Section 393 of the Restatement (Second) of Agency (1980) applies to actions involving claims of unfair competition by a principal against former employees. *American Republic*

*Ins. Co. v. Union Fidelity Ins. Co.*, 295 F.Supp. 553 (D.Or.1968), *aff'd*, 470 F.2d 820 (9th Cir.1972); *Western Alliance Corp. v. Western Reliance Corp.*, 57 Or.App. 263, 643 P.2d 1382 (1982). Section 393(e) provides that, absent a restrictive agreement, after the termination of his agency an agent can properly compete with his principal as to matters for which he has been employed. However, the privilege of an employee to prepare to compete with his current employer is not absolute. Comment e to Section 393 of the Restatement (Second) of Agency provides:

> e. *Preparation for competition after termination of agency.* After the termination of his agency, in the absence of a restrictive agreement, the agent can properly compete with his principal as to matters for which he has been employed. See § 396. Even before the termination of the agency, he is entitled to make arrangements to compete, except that he cannot properly use confidential information peculiar to his employer's business and acquired therein. Thus, before the end of his employment, he can properly purchase a rival business and upon termination of employment immediately compete. He is not, however, entitled to solicit customers for such rival business before the end of his employment nor can he properly do other similar acts in direct competition with the employer's business.

The limits of proper conduct with reference to securing the services of fellow employees are not well marked. An employee is subject to liability if, before or after leaving the employment, he causes fellow employees to break their contracts with the employer. On the other hand, it is normally permissible for employees of a firm, or for some of its partners, to agree among themselves, while still employed, that they will engage in competition with the firm at the end of the period specified in their employment contracts. However, a court may find that it is a breach of duty for a number of the key officers or employees to agree to leave their employment simultaneously and without giving the employer an opportunity to hire and train replacements.

This court considered facts similar to those presented in this case in *American Republic Ins. Co. v. Union Fidelity Life Ins. Co.*, 295 F.Supp. 553, *aff'd* 470 F.2d 820 (1972). The court held that an employee of American Republic Ins. Co. committed an act of unfair competition when, while still employed by American Republic Ins. Co., he encouraged other employees of American Republic Ins. Co. to join him in moving to Union Fidelity Life Ins. Co. The court held that because Union Fidelity Life Ins. Co. knowingly participated in, encouraged, and accepted the benefits of the acts of unfair competition of the former employee of American Republic Ins. Co., Union Fidelity Life Ins. Co. was liable for the acts of unfair competition committed by its employee.

Based on the holding in *American Republic* and the evidence before it, the court finds that A & A has demonstrated a probability that it will prevail on the merits of its claim that Econe breached his fiduciary duty to A & A by encouraging other employees of A & A to join him in moving to BB & C. If the actions of Econe are ultimately found to constitute a breach of his fiduciary duty to A & A and are therefore held to be acts of unfair competition, then pursuant to the holding in *American Republic*, because BB & C accepted the benefits of these acts of unfair competition, BB & C would also be held liable for the acts of Econe.

The court also finds, pursuant to Section 393, Comment e of the Restatement Second of Agency, that A & A has demonstrated a probability that it will prevail on the merits of its claim that Econe, Lovejoy, Hawkins and Williams violated their fiduciary duty to A & A by organizing an en masse resignation from A & A and giving A & A no notice of their intent to resign.

B. Did the defendants violate their fiduciary duty to A & A by improperly soliciting customers for BB & C while still employed by A & A?

An employee is not entitled to solicit customers for a rival business before the

end of his employment, nor can he properly do similar acts in direct competition with his employer's business. Section 393 Restatement (Second) of Agency. However, a departing employee may advise customers of his employer of his intention to leave and set up a competing business. *Cudahy Co. v. American Labs., Inc.*, 313 F.Supp. 1339, 1347 (D.Neb.1970).

Econe admits that he notified numerous clients of A & A of his intent to resign from A & A and to establish BB & C prior to the time he resigned from A & A. A & A contends, however, that Econe went beyond the notification of the clients of A & A, and that Econe solicited the business of clients of A & A on behalf of BB & C while he was still employed by A & A.

On June 22, 1990, while he was still employed by A & A, Econe sent a letter to Donald J. Fisher, vice president of Tele-Communications, Inc. (TCI), one of A & A's major clients. That letter includes a business plan for BB & C. The list of services provided by BB & C according to that business plan is nearly identical to a similar document formulated by A & A for its clients. The business plan includes a budget with first year projected revenues of $775,000, which represents the entire book of business of the Portland office of A & A.

In June, July and August of 1990, Econe persuaded numerous clients of A & A to change their broker of record letters to reflect Donald J. Econe, rather than A & A as the broker of record for their accounts. Beginning in June, 1990, the defendants contacted A & A clients in person, at A & A's expense, to inform them of their plan to establish BB & C. In mid-July, following the defendants' contacts with these clients, the volume of mail received by A & A from major clients decreased noticeably.

The Oregon Society of Certified Public Accountants announced in the summer of 1990 that it was reviewing broker/consultant services. The announcement invited written proposals from benefits firms interested in acting as brokers for the Society. The announcement called for such proposals to be submitted by July 31, 1990. In response to this announcement, Econe, apparently acting on behalf of BB & C, prepared a ten-page document describing the advantages offered by his firm and comparing those attributes to the services currently being provided to the Society by A & A. On July 31, 1990, Econe was still employed by A & A.

On August 3, 1990, while still employed by A & A, Lovejoy sent a letter to United Artists Entertainment Company, a client of A & A, which was printed on a letterhead bearing the name "Benefit Brokers & Consultants." The letterhead included the future address of BB & C. This letter was sent in response to material sent by United Artists Entertainment Company to A & A.

The evidence in the record demonstrates that the defendants, and especially Econe and Lovejoy, operated BB & C in direct competition with A & A while still employed by A & A. The court finds that A & A has demonstrated a probability that it will prevail on its claim that the defendants impermissibly solicited the clients of A & A on behalf of BB & C while still employed by A & A.

C.  Did Econe, Hawkins, Lovejoy and Lauria violate their fiduciary duties to A & A by making improper use of the resources of A & A in establishing BB & C?

Econe, Hawkins, Lovejoy and Lauria contend that any use they made of the resources of A & A to establish BB & C was minor and therefore does not support the granting of injunctive relief in favor of A & A.

The defendants used computers at A & A to draft the business plan and budget of BB & C, memoranda regarding equipment, and letters soliciting A & A clients on behalf of BB & C. Hawkins performed the tasks necessary to equip BB & C by procuring office space, furniture, equipment, stationery and other supplies. Hawkins estimated that she spent two hours each day in June and July, 1990 organizing BB & C. Most of this occurred during customary business hours and was accomplished using A & A equipment and resources.

Based on the evidence in the record, the court finds that A & A has demonstrated a probability that it will prevail on its claim that the defendants violated their fiduciary duty to A & A by using A & A resources to establish BB & C.

D. Did Econe, Hawkins, Lovejoy, Lauria and BB & C misappropriate confidential and trade secret information that belonged to A & A?

A & A contends that Econe, Hawkins, Lovejoy and Lauria, acting on behalf of BB & C while they were still employed by A & A, made copies of entire files of records concerning customers of A & A and took this information along with other customer and financial information with them to BB & C. Econe, Hawkins, Lovejoy and Lauria deny that they brought copies of A & A files to BB & C and that any of the documents they took from A & A contain confidential or trade secret information.

Even in the absence of an enforceable confidentiality agreement, an employee is under a duty not to divulge the confidential information or trade secrets of his employer for his own benefit or for the benefit of third parties. *McCombs v. McClelland*, 223 Or. 475, 483–84, 354 P.2d 311 (1960). A trade secret includes cost data, customer lists, or other information that derives independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure and which is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Uniform Trade Secrets Act, O.R.S. 646.461.

Econe, Hawkins, Lovejoy and Lauria admit taking their own telephone directories and calendars, as well as personal papers including personal bills and health insurance papers. They also admit taking files belonging to Econe which contain his licenses from various states to act as an insurance broker, as well as copies of his current and outdated commission contracts and copies of activity reports listing unfinished tasks for four clients. Of these documents, only the activity reports listing unfinished tasks for four clients would be likely to be considered confidential information.

However, there is strong circumstantial evidence in the record to support the allegation of A & A that Econe, Hawkins, Lovejoy and Lauria arranged to have whole client files copied so that this information could be transported to BB & C. A & A alleges that Hawkins, while employed by A & A, hired two temporary secretaries to copy the customer files of TCI and United Artists, who were customers of A & A, and that copies of these files were later boxed and taken to BB & C.

The court finds that the information contained in the client activity reports and the customer files was confidential and that the defendants indicated their understanding of its confidential nature when they signed the forms provided in their employee handbooks. Based on the evidence in the record, the court finds that A & A has demonstrated a probability of success on the merits of its claim for the misappropriation of confidential information or trade secrets.

E. Did Econe, Hawkins, Lovejoy, Lauria and BB & C tortiously interfere with A & A's business relationships with its customers, employees and insurance carriers?

To establish a claim for interference with business relationships under the laws of the State of Oregon, a plaintiff must establish that the defendant acted intentionally, either with an improper objective of harming the plaintiff or through a wrongful means. *Bugge v. Far West Fed. Bank*, 100 Or.App. 133, 141, 785 P.2d 1058, 1063 (1990) (citing *Top Serv. Body Shop v. Allstate Ins. Co.*, 283 Or. 201, 582 P.2d 1365 (1978)).

A & A's claims that Econe, Hawkins, Lovejoy and Lauria tortiously interfered with its existing and prospective business contracts are based on the fact that while

he was employed by A & A, Econe solicited employees of A & A to work for BB & C, and that Econe, Hawkins, Lovejoy and Lauria solicited the clients of A & A to transfer their business to A & A. These facts are the same facts submitted in support of A & A's claims that Econe, Hawkins, Lovejoy and Lauria breached their fiduciary duties to A & A. Because there is evidence to support a finding that the defendants breached their fiduciary duty to A & A, the court finds that A & A has demonstrated a probability of success on its claim for tortious interference with business relationships.

F. Did the defendants divert corporate opportunities that belonged to A & A from A & A to BB & C?

The doctrine of corporate opportunity precludes corporate fiduciaries from diverting to themselves business opportunities in which their corporate employer has an expectancy, property interest, or which in fairness should otherwise belong to the corporation. *Klinicki v. Lundgren*, 298 Or. 662, 666, 695 P.2d 906, 910 (1985). A & A has submitted evidence that the defendants, especially Econe, solicited customers of A & A on behalf of BB & C while still employed by A & A. Based on this evidence, the court finds that A & A has demonstrated a probability that it will prevail on its claim for diversion of corporate opportunities.

2. *Irreparable Harm*

A & A contends that, absent injunctive relief, it will continue to suffer immediate and irreparable harm in the form of the loss of its valuable and confidential business information. The defendants contend that A & A is not entitled to injunctive relief because any harm A & A has suffered from the acts of the defendants is past and the damage resulting from those acts is quantifiable.

As discussed above, the court finds that A & A has demonstrated a strong probabil-

ity of success on the merits of its claims against BB & C and Econe, Hawkins, Lovejoy and Lauria. Econe, Hawkins, Lovejoy and Lauria used and continue to use the expertise they developed at the expense of A & A to lure clients of A & A to follow them to BB & C. Econe, Hawkins, Lovejoy and Lauria misappropriated confidential information belonging to A & A and used and continue to use that information to establish a business to compete with A & A.

Former employees are privileged to leave their employers and fairly compete against them. This privilege does not extend to employees who violate their duty of loyalty to their employer by plotting an en masse resignation, without warning, which has the effect of eviscerating the work force and operation of the employer's office. The privilege does not extend to employees who solicit their employer's clients on behalf of a competitor while purporting to serve their employer, nor to employees who misappropriate confidential information belonging to their former employer and then use that information in competition against their employer.

Under the traditional test used to determine whether a preliminary injunction should issue the court considers: "(1) the likelihood of plaintiff's success on the merits; (2) the possibility of plaintiff's suffering irreparable injury if relief is not granted; (3) the extent to which the balance of hardships favors the respective parties; and (4) in certain cases, whether the public interest will be advanced by the provision of preliminary relief." *United States v. Odessa Union Warehouse Co-op.*, 833 F.2d at 174.

A & A has demonstrated a strong probability of success on the merits of its claims. Absent injunctive relief, A & A will suffer irreparable injury in the form of its inability to fairly compete with BB & C because of the misappropriation and continuing misuse of A & A's confidential information by the defendants and because of the continuing injury to A & A's business caused by

**1416**

the defendants' raid of its workforce and client base. The order requested by A & A will enjoin BB & C only from retaining or using the confidential information or trade secrets of A & A, from soliciting or accepting the business of entities which were clients or actively solicited prospective clients of A & A since August of 1988, and from otherwise interfering with the business relationships of A & A. The defendants will be free to compete with A & A for any other business anywhere in the country. Granting the order will permit A & A an opportunity to regroup and compete with BB & C and will only slightly limit the clients whose business BB & C may solicit. Because of the ready availability of benefit broker services, the public interest is not implicated in this case.

Under the alternative test used in this circuit to determine whether an injunction should issue, the party seeking the injunction must show either 1) a combination of probable success on the merits and the possibility of irreparable injury; or 2) that serious questions are raised and the balance of hardships tips sharply in its favor. *Briggs*, 886 F.2d at 1143. A & A has made a strong showing of the probability of its success on the merits and has demonstrated the possibility of irreparable injury. Under either the traditional or alternative test, A & A has met its burden of demonstrating the need for injunctive relief.

## CONCLUSION

A & A's motion for a preliminary injunction (# 35–1) is granted.