Robert MARTYR, Plaintiff,

v.

George BACHIK, et al., Defendants.

Civ. No. 90–1086–FR.

United States District Court,
D. Oregon.

Aug. 1, 1991.

---

Spencer M. Neal, Ginsburg, Gomez & Neal, Portland, Or., for plaintiff.

Dave Frohnmayer, Atty. Gen., Kendall M. Barnes, Asst. Atty. Gen., Salem, Or., for defendants.

## OPINION

FRYE, Judge:

The matter before the court is the motion (# 36) of plaintiff, Robert Martyr, for summary judgment on his claim that defendants, George Bachik, Alice Shannon, A. Furqan, D. Hillyer and C. Jeter, are violating his right to send sealed mail to government officials. He seeks an order of the court declaring that mail addressed to government officials is privileged, and that OAR 309–102–020 is unconstitutional to the extent that it does not protect from censorship mail addressed to or from government officials.

## UNDISPUTED FACTS

Martyr is a patient confined at the Oregon State Hospital (OSH). Defendants are employees of the State of Oregon who work at OSH. At all times relevant to this action, defendants were acting under color of state law.

Defendants censor all of the mail sent by Martyr, except mail that is identified as "legal mail," pursuant to a treatment plan that defendants have developed for Martyr. The treatment plan directs defendants to inspect outgoing mail from Martyr for "fearful and threatening material." The treatment plan approved by Bachik allows "legal mail" to be excluded from this restriction. OAR 309–102–005(3) defines legal mail as "any mail from, or addressed to, any attorney, any court, and any legal aid bureau or service."

Defendants have censored letters sent by Martyr to members of the United States Congress, an Oregon State Police detective, and an employee of the Risk Management Division of the State of Oregon. Defendants rely upon OAR 309–102–000 to 309–102–025 to justify the censorship of mail from Martyr to public officials. Defendants admit that under the guidelines set forth in the treatment plan, they would censor a letter from Martyr addressed to the nursing supervisor at the OSH which contains allegations of patient abuse.

OAR 309–102–010 provides that all patients and residents in state institutions have the right to communicate freely by sending and receiving sealed mail, and that employees of the state institutions shall not censor the mail except where there is reasonable cause to suspect that mail contains a prohibited item or evidence of a crime or potential crime. OAR 309–102–005(6)(d) defines a prohibited item, in part, as "[a]ny item the possession of which is detrimental to the treatment and training of an individual patient or resident and which is recorded in the treatment and training orders section of the patient's or resident's chart by the treating physician."

The letters that Martyr writes contain outrageous accusations and lurid language relating to his treatment at the OSH. Martyr has not attempted to send a letter advocating or threatening violence or illegal activities. The material he has attempted to send through the mail does not fall outside of the protections of the First Amendment to the United States Constitution.

## CONTENTIONS OF THE PARTIES

Martyr contends that under the First Amendment to the United States Constitu-

tion, he has a right to send uncensored mail to any government official including, but not limited to, the Governor of the State of Oregon, members of the United States Congress and the Oregon state legislature, the Oregon State Police, and the Risk Management Division of the State of Oregon.

Defendants contend that Martyr does not have an unqualified right to send mail to government officials, but rather that this right must be balanced against the interests of the State of Oregon in treating Martyr, and that the interests of the State of Oregon in treating Martyr outweigh the interest of Martyr in corresponding with government officials.

## APPLICABLE STANDARD

Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The burden to establish the absence of a material issue of fact for trial is on the moving party. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). This burden "may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden shifts to the nonmoving party to "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

Assuming there has been adequate time for discovery, summary judgment should then be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.*

at 322, 106 S.Ct. at 2552. All inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). When different ultimate inferences can be reached, summary judgment is not appropriate. *Sankovich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir.1981). Finally, summary judgment is inappropriate where credibility is at issue. Credibility issues are appropriately resolved only after an evidentiary hearing or full trial. *SEC v. Koracorp Indus.*, 575 F.2d 692, 699 (9th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 348, 58 L.Ed.2d 343 (1978).

## APPLICABLE LAW

Martyr was committed to the OSH after he was found not guilty of criminal acts by reason of insanity. The confinement of Martyr is analogous to the confinement of a person convicted of crimes. Therefore, the court will borrow from the jurisprudence of courts considering the rights of prisoners.

The United States Supreme Court has articulated a test to be applied for determining the conditions under which the censorship of prisoner mail is warranted. *Procunier v. Martinez*, 416 U.S. 396, 414, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974), *rev'd in part*, *Thornburgh v. Abbott*, 490 U.S. 401, 109 S.Ct. 1874, 1881, 104 L.Ed.2d 459 (1989).[1] That test is:

> [C]ensorship of prisoner mail is justified if the following criteria are met. First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression. Prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements. Rather, they must show that a regulation authorizing mail censorship furthers one or more of the

---

1. Although the Supreme Court later adopted a different test for censorship of *incoming* mail because of security concerns within a prison, *Thornburgh v. Abbott*, 490 U.S. at 409–16, 109

S.Ct. at 1879–83, the test for censorship of *outgoing* prisoner mail announced in *Procunier* remains valid.

substantial governmental interests of security, order, and rehabilitation. Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved. Thus a restriction on inmate correspondence that furthers an important or substantial interest of penal administration will nevertheless be invalid if its sweep is unnecessarily broad.

*Procunier* at 413–14, 94 S.Ct. at 1811. This court has heretofore ruled that the interest of defendants, which is the treatment and rehabilitation of Martyr, is a substantial governmental interest that satisfies the first prong of the test set out in *Procunier. Martyr v. Bachik,* 755 F.Supp. 325 (D.Or.1991). In this motion, the court must consider whether the limitations placed on Martyr's right to send mail are no greater than are necessary to treat and rehabilitate him.

When adjudicating the constitutional justification for prison mail procedures involving correspondence with a small number of special, largely governmental parties, rather than those related to correspondence with the general public, the interest of the prisoner in access to the courts, the effective assistance of counsel, and the right to petition the government for redress of grievances, as well as the first amendment rights of free speech of the prisoner, must be considered. *Taylor v. Sterrett,* 532 F.2d 462, 466 (5th Cir.1976).

In *Taylor,* the court applied the balancing test articulated in *Procunier* to a prison practice of opening, inspecting and reading mail from inmates addressed to governmental agencies. Administrators of the prison contended that such inspection was necessary in order to safeguard prison security. The court ruled that the "opening and reading of outgoing mail to government agencies is not significantly related to the advancement of jail security" and concluded that the government had failed to identify a substantial governmental interest in censorship that outweighed the interest of the prisoner in sending sealed correspondence. *Id.* at 480.

In *Davidson v. Scully,* 694 F.2d 50 (2d Cir.1982), the Second Circuit considered the validity of a prison regulation that required a prisoner to mail a form to an addressee with whom he sought to correspond, although the prisoner was not permitted to identify the reason that he wished to correspond, and have the addressee mail the form back indicating that he was willing to accept the correspondence, before the prisoner was permitted to mail it. The prison applied this restriction to mail addressed to public officials. The court found unpersuasive the argument of the prison that these restrictions were a rational implementation of the security needs of the prison. The court recognized that because public officials and others with no prior connection to the prisoner were the least likely to respond to the prisoner's request for correspondence, the rule could be harmful to the rights of the prisoner because it could prevent the timely filing of legal documents. The court held that by denying prisoners free access to public officials and agencies, the fundamental right of access to the courts was also restricted.

In *Hardwick v. Ault,* 447 F.Supp. 116 (M.D.Ga.1978), the court considered the conditions in a wing of a prison used as a disciplinary cell block in the State of Georgia. Among the conditions reviewed by the court were the restrictions placed on the outgoing mail of prisoners. The prison divided the mail of prisoners into four categories, one of which was characterized as "outgoing privileged mail." This category included letters addressed to members of Congress, the Georgia state legislature, the Governor and the Lieutenant Governor of the State of Georgia, the President or Vice President of the United States, certain corrections officials of the State of Georgia, the courts, and the prisoner's attorney of record. An administrative regulation provided that letters addressed to anyone listed in the category of "outgoing privileged mail" could be sent sealed, and that these sealed letters were not subject to censorship. The regulation also provided that if a letter categorized as "outgoing privileged mail" was later shown to be derogatory to

the addressee, the mailing privilege of the sender could be suspended.

In reviewing the prison regulation, the district court held that although the mail characterized as "outgoing privileged mail" was being handled correctly, the list of privileged addressees was too restricted. The court held that in addition to the list of privileged addressees identified in the prison regulation, privileged outgoing mail must also include any governmental agency or the press. The court also held that "[u]nless a letter contains a threat to prison order and security or is in direct violation of law, there is usually no constitutionally sufficient reason to stop it." *Id.* at 129. "[L]etters containing simply profane or obscene language are not the proper subject of direct censorship through either halting the letter or suspending the mailing privilege." *Id.*

The court qualified the prisoner's right to send outgoing privileged mail only by stating that "if there is a reasonable suspicion that an outgoing letter contains either contraband or poses a threat to prison security, then the letter may be opened in the presence of the prisoner and inspected." *Id.* at 129–30.

### The Relief Sought by Martyr

1. Is OAR 309–102–020 unconstitutional?

■ Martyr asks the court to "issue a declaration that mail to [government] officials is privileged and that OAR [3]09–102–020 is unconstitutional to the extent that it does not protect mail addressed to or from governmental officials from censorship." Plaintiff's Motion for Partial Summary Judgment, p. 1. OAR 309–102–020 provides:

> From time to time, the Administrator may designate certain areas of the state institutions as locked high security areas. The superintendent of the state institutions shall request in writing such designation by ward or cottage. The Administrator shall approve or disapprove the designation within 30 days of the request. In such areas, employes of the state institutions are authorized to open all mail in the presence of the patient or

resident except legal mail as prescribed in OAR 309–102–015, even though there may not be reasonable cause to believe that a specific piece of mail contains a prohibited item.

A court will conclude that a statute or administrative rule is unconstitutional on its face only where the statute or administrative rule would be unconstitutional in every conceivable application. *Members of City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984).

■ The court has heretofore recognized that any form of involuntary confinement may necessitate restrictions on the involuntarily committed person's right to free speech. *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125, 97 S.Ct. 2532, 2537, 53 L.Ed.2d 629 (1977). The test for the censorship of mail sent from individuals involuntarily committed to the custody of the state, which is articulated in *Procunier* and discussed above, requires the balancing of the interests of the state in censoring a given piece of mail against the interests of the prisoner in sending that piece of mail. Because those interests will differ from case to case, as will the outcome of the balancing of those interests, the court concludes that not every application of OAR 309–102–020 will be invalid.

2. Is the censorship of mail from Martyr to government officials valid under the test of Procunier v. Martinez?

Defendants cite two cases in support of their position. In *Davis v. Watkins,* 384 F.Supp. 1196 (N.D.Ohio 1974), the court was asked by the parties to establish parameters for the rights of mental patients at the state hospital. In its opinion, the court stated that "[p]atients' right to communication shall not be prohibited except to the extent that the qualified mental health professional responsible for the formulation of the patient's treatment plan writes an order imposing special restrictions and explains the reasons for any such restric-

tions." *Id.* at 1208. However, this provision applied only to the right of patients to make telephone calls. *Id.* at 1207–08. The patients had an unlimited right to send and receive sealed mail. *Id.* at 1207.

In *Wyatt v. Stickney,* 344 F.Supp. 373 (M.D.Ala.1972), *aff'd in part and remanded in part, Wyatt v. Aderholt,* 503 F.2d 1305 (5th Cir.1974), the district court was charged with establishing the constitutional parameters of communication for patients confined in state mental hospitals. The court in *Wyatt* held that the rights of patients to visitation and telephone communications were restricted, but that "[p]atients shall have an unrestricted right to send sealed mail." *Id.* at 379.

The courts in *Davis* and *Wyatt* considered the constitutionality of restrictions upon communication of individuals who, like Martyr, are patients confined to state mental institutions. Those courts weighed interests similar to those presented in this case and implicitly found that the interests of the patients in sending sealed mail outweigh the interests of the state in treating the patient. In the motion before it, the court will consider only the interests of Martyr in sending sealed mail to government officials, not his interest in sending sealed mail to others.

█ As the courts in *Taylor v. Sterrett, Davidson v. Scully,* and *Hardwick v. Ault* noted, the interest of a patient in sending sealed mail to government officials deserves protection under the right to free speech, the right to access to the courts, and the right to petition the government for redress of grievances. The parties have cited no cases to the contrary, nor has the court found any. Based on the holdings in these cases, as well as those of *Davis v. Watkins* and *Wyatt v. Stickney,* the court concludes that because the interests of Martyr in sending mail to government officials deserves special protection under each of the rights listed above, the interests of the State of Oregon in treating Martyr does not outweigh the interests of Martyr in sending sealed mail to government officials.

CONCLUSION

Martyr's motion for partial summary judgment (# 36) is denied as to his motion that the court declare OAR 309–102–020 unconstitutional, and granted as to his motion for a declaration that his mail to government officials is privileged and should be mailed without being opened.