**Robert MARTYR, Plaintiff,**

v.

**George BACHIK, et al., Defendants.**

**Civ. No. 90-1086-FR.**

United States District Court,
D. Oregon.

Aug. 1, 1991.

---

Spencer M. Neal, Ginsburg, Gomez & Neal, Portland, Or., for plaintiff.

Dave Frohnmayer, Atty. Gen., and Kendall M. Barnes, Asst. Atty. Gen., Salem, Or., for defendants.

## OPINION

FRYE, District Judge:

The matter before the court is the renewed motion (# 24) of plaintiff, Robert Martyr, for a preliminary injunction prohibiting defendants, George Bachik, Alice Shannon, A. Furqan, D. Hillyer, C. Jeter, their agents, and those acting in concert with them, and all others with notice of the order from opening, reading, censoring, seizing, withholding or delaying any mail from Martyr addressed to:

1) any elected public official and his or her staff members, including, but not limited to, the governor of the State of Oregon, state and federal legislators and district attorneys;

2) any public official and his or her staff members, including, but not limited to, the state and federal police agencies, risk management offices, and the administrators of the state department of human resources or the state hospital;

3) advocacy groups, including, but not limited to, the American Civil Liberties Union, the Oregon Advocacy Center, and the Oregon Alliance for the Mentally Ill;

4) attorneys, licensed in any state;

5) religious counselors;

6) newspapers, magazines or other periodicals;

7) commercial establishments; and

8) persons who have indicated to the administration of the Oregon State Hospital that they wish to receive correspondence from Martyr.

Martyr also seeks to enjoin the defendants from opening, reading, censoring, withholding or delaying his outgoing mail unless they:

1) give him notice of their intent to open, read, censor, withhold or delay each individual piece of mail;

2) state the reason that any affected piece of mail is felt to be within the scope of the treatment plan;

3) allow Martyr an opportunity to challenge the proposed action before a person not involved in the decision to open, read, censor, withhold or delay the mail;

4) if mail is opened, read, censored, withheld or delayed despite the objections of Martyr, provide Martyr with a written statement of the reasons for overriding his objections; and

5) send to counsel for Martyr a copy of the notice and justification for the censorship of the item of mail at issue.

### UNDISPUTED FACTS

Martyr is a patient and resident of the Oregon State Hospital (OSH), which is located in the City of Salem, Oregon. He has been under the jurisdiction of the Psychiatric Security Review Board of the State of Oregon since 1977. He is confined to a high risk security building and is not permitted to leave the grounds of the Oregon State Hospital. Bachik is the Superintendent of the OSH. Dr. Alice Shannon is Martyr's treating physician. Furqan, Jeter and Hillyer are nurses at the OSH.

On April 16, 1990, Bachik approved a restriction on the outgoing mail of Martyr that was requested by Dr. Shannon. Bachik's written approval of the proposed restriction provides, in relevant part:

In accordance with OAR 309–102–005(6)(d), all mail prepared by OSH patient no. 46888 [Martyr] that contains written materials that are detrimental to the treatment of OSH patient no. 46888 are hereby declared a prohibited item.

In accordance with OAR 309–102–020, Forensic Psychiatric Program staff are authorized to open all mail of OSH patient no. 46888 in the presence of the patient. All mail shall be inspected daily to determine the presence of a prohibited item. Mail which includes prohibited items shall be confiscated by Forensic Psychiatric Program staff, in accordance with OAR 309–102–015. Once confiscated, these prohibited items shall be handled in accordance with OAR 309–108–015(6). It is imperative that these procedures outlined in the above cited rules be strictly adhered to by all staff.

Mail that does not include prohibited items and legal mail are excluded from confiscation.

The treatment plan for Martyr provides as follows:

Mr. M. is sending mass mailings into the community that are seen as upsetting and threatening by individuals in the community. This is his method of avoiding treatment to deal with his anger associated with his placement in OSH and his jurisdiction under the PSRB.

Patient will be able to deal with anger in the treatment setting (with CM/MD/RN/PHD) not thru [sic] the community upset.

Pt will be able to discuss with Cm anger and reduce level his agitation in the treatment setting rather then ventilating anger thru [sic] mass mailings daily in one month.

1. inspect outgoing mail for fearful and threatening material each day by RN (48C) Staff RN

. . . .

3. mail that is confiscated OAR 309.-102–015 sub 2, 3, 4, 5, 6, 7 date, name, material, signature of authority, one copy to the patient one copy to the chart. Keep in the drawer and then long term storage.

Exhibit B to Plaintiff's Reply Regarding Renewed Motion for Preliminary Injunction, p. 1 (Addendum to IDT Treatment and Care Plan for Martyr).

A log of the outgoing mail of Martyr from May 14, 1990 to November 12, 1990 shows that he has submitted 537 items for mailing, and that 153 of those items were withheld pursuant to his treatment plan. According to the log of outgoing mail, the letters withheld include letters to:

1) long-time correspondents of Martyr who have expressed willingness to correspond with Martyr (Affidavit of Roscoe West, p. 4);

2) Martyr's attorney in this action, Spencer Neal (however, the letter was not identified on the envelope as a letter to an attorney) (Defendants' Exhibit 2, p. 6);

3) at least two other attorneys, which were identified as such (Defendants' Exhibit 2, p. 19);

4) Robert Joondeph, the head of the Oregon Advocacy Center (Defendants' Exhibit 2, pp. 24, 25);

5) the Oregon Alliance for the Mentally Ill (Defendants' Exhibit 2, p. 11);

6) elected officials, including David Duke (Defendants' Exhibit 2, p. 12), Denny Smith, Mark Hatfield and Robert Packwood (Defendants' Exhibit 2, p. 14);

7) an Oregon State Police detective (Defendants' Exhibit 2, p. 16); and

8) a letter to an employee of the Risk Management Division of the Oregon Department of General Services that was mailed to the agency in fulfillment of the requirements of O.R.S. 30.275 to preserve Martyr's alleged state law tort claims.

In general, the letters that Martyr writes contain outrageous accusations and lurid language relating to his treatment at the OSH. Martyr has not attempted to send a letter advocating or threatening violence or illegal activities. The material he has attempted to send through the mail does not fall outside the protections of the First Amendment to the United States Constitution.

In his complaint, Martyr seeks a declaration that the defendants have violated his rights under the First and Fourteenth Amendments to the United States Constitution and O.R.S. 426.385. O.R.S. 426.385 provides, in relevant part: "Every mentally ill person committed to the division shall have the right to [c]ommunicate freely in person, by sending and receiving sealed mail and by reasonable access to telephones." Martyr also seeks preliminary and permanent injunctions in his favor against defendants Bachik and Shannon and those acting in concert with them.

## CONTENTIONS OF THE PARTIES

Martyr contends that the restrictions imposed by the defendants on his outgoing mail and the manner in which those restrictions are implemented infringe his rights under the First and Fourteenth Amendments to the United States Constitution and O.R.S. 426.385. He seeks an order preliminarily enjoining the defendants from censoring, opening or interfering with mail sent by him to the addresses listed above. Martyr also asks the court to order the defendants to follow certain procedures when they undertake to censor his mail. Martyr asserts that these procedures must be implemented to protect his right to due process of law under the fourteenth amendment as well as to protect evidence necessary for the litigation of this case.

Defendants contend that the monitoring of the outgoing mail of Martyr is consistent with the treatment plan that his physician has developed for him, and that the court should defer to the opinion of the "qualified mental health care professional" who has advised that all of the outgoing mail of Martyr should be censored. Defendants contend that the diminution of the first amendment rights of Martyr that results from this restriction is valid and necessary because of his confinement and

need for treatment.[1] Defendants also contend that Martyr must follow the grievance procedures established by the OSH if he wishes to complain about the censorship of his mail. Defendants contend that these procedures provide Martyr with all the process to which he is entitled under the fourteenth amendment.

## APPLICABLE STANDARD

■ The Ninth Circuit does not apply a unitary fixed test to decide whether a party has demonstrated its entitlement to a preliminary injunction. *Briggs v. Sullivan*, 886 F.2d 1132, 1143 (9th Cir.1989). The party seeking the injunction must show either 1) a combination of probable success on the merits and the possibility of irreparable injury; or 2) that serious questions are raised and the balance of hardships tips sharply in its favor.

These are not separate tests, but rather two ends of a "sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.* (quoting *United States v. Odessa Union Warehouse Co-op.*, 833 F.2d 172, 174 (9th Cir.1987)). If the balance of hardships strongly favors the moving party, a preliminary injunction may be granted even though the questions raised are only serious enough to be litigated. *Briggs* at 1143.

■ Where the moving party seeks a preliminary injunction that goes beyond maintaining the status quo *pendente lite*, courts should be extremely cautious and should not grant relief unless the facts and the law clearly favor the plaintiff. *Committee of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1441 (9th Cir.1986).

## APPLICABLE LAW

■ Any form of involuntary confinement, whether incarceration or involuntary commitment, may necessitate restrictions on the right to free speech. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125, 97 S.Ct. 2532, 2537, 53 L.Ed.2d 629 (1977). The United States Supreme Court has articulated a test to be applied for determining the conditions under which the censorship of inmate mail is warranted. *Procunier v. Martinez*, 416 U.S. 396, 414, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974), *rev'd in part, Thornburgh v. Abbott*, 490 U.S. 401, 109 S.Ct. 1874, 1881, 104 L.Ed.2d 459 (1989).[2] That test is:

> [C]ensorship of prisoner mail is justified if the following criteria are met. First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression. Prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements. Rather, they must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation. Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved. Thus a restriction on inmate correspondence that furthers an important or substantial interest of penal administration will nevertheless be invalid if its sweep is unnecessarily broad.

*Procunier* at 413–14, 94 S.Ct. at 1811.

## ANALYSIS AND RULING

### Balance of Hardships

Martyr is confined in a high-security building at the OSH and is not permitted to leave the hospital grounds. His primary means of communicating with people outside the OSH is by writing letters. The restrictions placed on his mail by the defen-

---

1. The only governmental interest identified by the defendants in support of censoring the outgoing mail of Martyr is treatment; they do not assert hospital security as a grounds for the censorship.

2. Although the Supreme Court later adopted a different test for censorship of *incoming* mail because of security concerns within a prison, the test for censorship of *outgoing* prisoner mail announced in *Procunier* remains valid. *Thornburgh v. Abbott*, 109 S.Ct. at 1881.

dants impose a great hardship upon him. Each time one of his letters is withheld from the mail, Martyr loses his ability to express himself and to communicate with others.

On the other hand, the defendants are charged with treating and rehabilitating Martyr. If the court grants Martyr's motion for a preliminary injunction, they may lose the ability to treat Martyr effectively. Affidavit of Alice Shannon, M.D., p. 3.

*Probability of Success on the Merits*

Martyr was committed to the OSH after he was found not guilty of criminal charges by reason of insanity. His confinement is analogous to incarceration after conviction of criminal charges. Therefore, the court will borrow from the jurisprudence of prisoner cases to analyze the issues presented in this case.

Defendants have met the first prong of the *Procunier* test—that is, the censorship of Martyr's mail relates to the interest of the defendants in treating and rehabilitating Martyr. The second prong of the *Procunier* test is that the restriction placed on Martyr's outgoing mail—prohibiting letters that contain "fearful and threatening language"—be no greater than is necessary or essential to the interest of the State of Oregon in treating and rehabilitating Martyr. *See Procunier* at 413–14, 94 S.Ct. at 1811–12. The Court must weigh the interest of Martyr in exercising his first amendment rights against the interest of the State of Oregon in treating and rehabilitating him with respect to each of the categories of addressees identified by Martyr.

1. *Mail addressed to any elected public official and his or her staff members, including, but not limited to, the governor, state and federal legislators, and district attorneys*

■ The court has considered this category of correspondents at length in ruling on Martyr's motion for partial summary judgment. As stated in that opinion, case law from both prisoner and state mental institution cases indicates that every other court that has balanced the interest of an individual in sending sealed mail to this list

of addressees has held that because this interest draws protection under the first amendment right to freedom of speech, the right to access the courts, and the right to petition the government for a redress of grievances, the interest of the individual outweighs the interest of the state institution in censoring this mail. Based on the precedent in the case law, the court finds that Martyr has established a probability of success on his claim that he should be able to send mail to these addressees uncensored.

2. *Any public official, including, but not limited to, state and federal police agencies, risk management offices, and the administrators of the state department of human resources or the state hospital*

See discussion of # 1 above. The conclusion of the court is the same.

3. *Advocacy groups, including, but not limited to, the American Civil Liberties Union, the Oregon Advocacy Center, the Oregon Alliance for the Mentally Ill*

OAR 309–102–005(3) defines as legal mail any correspondence addressed to attorneys, courts, or legal aid bureaus or services. Correspondence with the advocacy groups identified by Martyr is subsumed in the right to access the courts because these groups may advocate his interests. Based on this fact and on the definition of legal mail in OAR 309–102–005(3), the court finds that these addressees deserve special consideration, and that there is a likelihood that Martyr will prevail on his claim that he should be able to send uncensored mail to these addressees.

4. *Attorneys licensed in any state*

■ Pursuant to OAR 309–102–005(3), defendants are prohibited from censoring mail from Martyr addressed to an attorney. The defendants represent that they do not censor such mail if it is clearly labeled as legal mail. Requiring Martyr to label such mail is a reasonable requirement. Defendants may also take steps to verify that

mail identified by Martyr as legal mail is actually addressed to a licensed, practicing attorney, a court, or legal aid bureau or service.

### 5. Religious counselors

Martyr contends that he has an "undeniable right under the first amendment to write to religious counselors, a right long recognized by the courts." Plaintiff's Memorandum in Support of Renewed Motion for Preliminary Injunction, pp. 4–5. In support of this contention, Martyr cites *Walker v. Blackwell*, 411 F.2d 23, 29 (5th Cir.1969). In *Walker*, the court held that prison inmates who were Black Muslims should be permitted to correspond with Elijah Muhammad for the limited purpose of seeking spiritual advice. *Id.*

Martyr does not limit his request to correspondence seeking spiritual advice. A review of the record indicates that Martyr disagrees strongly with the teachings of various religious leaders, and that these disagreements, rather than a request for spiritual counseling, are the subject of much of his writing. The main objective listed in Martyr's treatment plan is to force Martyr to confront his anger rather than venting it through "mass mailings to the community." The court has recognized this objective as a legitimate interest of the State of Oregon. In balancing the interest of the State of Oregon against the interest of Martyr in sending sealed correspondence, of unknown purpose, to unspecified religious counselors, the court finds that Martyr has failed to establish a probability that he will succeed on the merits of his claim that he has an absolute right to send uncensored mail to these addressees.

### 6. Newspapers, magazines or other periodicals

Martyr has failed to establish a probability of success on the merits of his claim that he has an absolute right to send uncensored mail to these addressees.

### 7. Commercial establishments

Martyr has failed to establish a probability of success on the merits of his claim that

he has an absolute right to send uncensored mail to these addressees.

### 8. Persons who have indicated to the administration of the Oregon State Hospital their desire to receive correspondence from Martyr

Martyr has failed to establish a probability of success on the merits of his claim that his interest in sending mail to these addressees outweighs the interest of the State of Oregon in treating him.

■ The question of what restrictions may be imposed by the State of Oregon on mail sent by a patient confined to a state mental hospital when that mail does not advocate violence or illegal activity or contain threatening material is a serious and complicated one—even when the goal of the restriction is therapeutic and rehabilitative. The gist of defendants' argument is that Martyr is capable of writing letters that would not be censored under the provisions of the treatment plan. However, whether or not Martyr has such a capability is irrelevant to a determination of the right of the defendants to censor the letters that Martyr attempts to mail. Under the test articulated in *Procunier*, the breadth of the restriction that the defendants have placed on the outgoing mail of Martyr may violate his rights under the First and Fourteenth Amendments to the United States Constitution.

The court finds that because serious issues are raised and the balance of hardships tips in favor of Martyr, and because Martyr has established the probability of success on the merits as to those categories of addressees identified by the court above, Martyr is entitled to a preliminary injunction prohibiting defendants from censoring mail from Martyr to these addressees.

### Martyr's due process claim

"The interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprison-

ment." *Procunier v. Martinez,* 416 U.S. at 418, 94 S.Ct. at 1814. "As such, it is protected from arbitrary governmental invasion" and any "decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards." *Id.* at 417, 418, 94 S.Ct. at 1814.

In *Procunier,* the United States Supreme Court approved the procedural requirements imposed by a district court on letters censored by prison officials. The district court required that an inmate be notified of the rejection of a letter written by him, be given a reasonable opportunity to protest that decision, and have his complaint about censorship be referred to a prison official other than the person who originally disapproved the correspondence. *Id.* at 418, 94 S.Ct. at 1814.

Defendants read each piece of mail that Martyr attempts to send to determine whether it should be sent or censored under the provisions of his treatment plan. When the decision to confiscate a certain piece of mail is made, Martyr is given a notice identifying the addressee and the reason for censorship, which based on the record, is invariably the cryptic notation "Inapprop. Letter." The confiscated mail is then stored at the hospital.

Martyr contends that he has no opportunity to challenge the decision to censor his mail. Defendants assert that the grievance procedures set forth in OAR 309–118–020 provide Martyr all of the process to which he is entitled in challenging the censorship of his mail. OAR 309–118–020 provides four levels of review of patient grievances. The first level is review by the "interdisciplinary team." The interdisciplinary team is the "group of professional and direct care staff which has primary responsibility for the development of a plan for the care, treatment, and training of an individual patient or resident." OAR 309–118–005(5). In this case, the interdisciplinary team responsible for Martyr is made up of the defendants. If the decision of the interdisciplinary team is adverse to the patient, he may appeal that decision to a grievance committee. OAR 309–118–

020(2)(c). The grievance committee has a minimum of five members designated by the superintendent. OAR 309–118–045(2). Three of the members of the committee are not members of the Mental Health Division. *Id.* The grievance committee has twenty-one days to hold a hearing and an additional twenty-one days to render its decision.

Martyr contends that these procedures do not provide adequate due process because 1) the informal grievance level and the first formal grievance level require the patient to appeal the censorship decision to the same persons who made that decision rather to an impartial decisionmaker; and 2) the procedure does not result in the reasonably prompt decision to which the patient is entitled.

Robert C. Joondeph, Intermim Executive Director of the Oregon Advocacy Center (OAC), has submitted an affidavit, in which he states that based on the involvement of the OAC in the representation of OSH residents before the OSH Grievance Committee, "OAC has come to understand from Hospital staff and Grievance Committee members that the grievance process is not an appropriate avenue to pursue challenges to patient treatment decisions. The grievance committee is not empowered to overrule or modify any action or proposed action which is considered to be a treatment decision." Exhibit G to Plaintiff's Reply Regarding Renewed Motion for Preliminary Injunction, p. 2.

Martyr asks the court to order the defendants to institute a procedure by which he is given 1) notice of the intent to censor an item of mail; 2) an explanation of why the mail is viewed as appropriate for censorship; 3) an opportunity to challenge the censorship decision to a party not involved in the original decision; and 4) a written explanation when his challenge is rejected. He also asks that a copy of the notice and justification for the censorship of the item of mail at issue be sent to his attorney.

■ The court can find no precedent to support Martyr's contention that he is entitled to receive notice before an item of mail is censored. Under the procedures current-

ly employed by the defendants, Martyr receives notice of the censorship of a mail item shortly after the decision is made. He also receives an explanation for the censorship, although those explanations have been vague. He can challenge the decision to the grievance committee, which includes individuals not involved in the censorship decision; however, he must first try to resolve the dispute with the defendants. Thus, most of the procedures requested by Martyr are already in operation in some form. The court finds that the absence of the procedures requested by Martyr does not harm him sufficiently for the court to order the defendants to institute those procedures. However, the court does find that, in light of the forthcoming trial in this case and the importance of the censorship notices to the issues involved in that trial, it is appropriate to require the defendants to send to counsel for Martyr copies of each notice of censorship and the justification for the censorship of the mail item at issue.[3]

## CONCLUSION

Martyr's renewed motion for a preliminary injunction (# 24) is GRANTED as to mail sent by Martyr addressed to:

1) any elected public official and his or her staff members, including, but not limited to, the governor of the State of Oregon, state and federal legislators, and district attorneys;

2) any public official and his or her staff members, including, but not limited to, state and federal police agencies, risk management offices, and the administrators of the state department of human resources or the state hospital;

3) advocacy groups, including, but not limited to, the American Civil Liberties Union, the Oregon Advocacy Center, and the Oregon Alliance for the Mentally Ill; and

4) attorneys licensed in any state; and DENIED as to the remaining categories of addressees.

**3.** This provision is also appropriate because Martyr has in the past attempted to mail copies of censorship notices and this mail has been censored.

Martyr's renewed motion for a preliminary injunction on his due process claim is DENIED, except as to the provision that the defendants shall send to counsel for Martyr a copy of the notice of censorship and the written justification for the censorship of each mail item at issue.